JOHN CATTS, PLAINTIFF IN ERROR, *v.* JAMES PHALEN, AND FRANCIS MORRIS, DEFENDANTS IN ERROR.

A person who receives the prize money, in a lottery, for a ticket which he had caused to be fraudulently drawn as a prize, is liable to the lottery contractors in an action for money had and received for their use. So far as he is concerned, the law annuls the pretended drawing of the prize; and he is in the same situation as if he had received the money of the contractors by means of any other false pretence.

THIS case was brought up by writ of error, from the Circuit Court of the United States, for the District of Columbia and county of Alexandria.

The facts were these:

The state of Virginia, in and prior to the year 1834, passed several acts authorizing a lottery to be drawn for the improvement of the Fauquier and Alexandria turnpike road.

In 1839, certain persons, acting as commissioners, made a contract with James Phalen and Francis Morris, of the city of New York, by which Phalen and Morris were authorized, upon the terms therein mentioned, to draw these lotteries. They proceeded to do so, and employed Catts to draw the tickets from the wheel. The following extract from the bill of exceptions sets forth the other facts in the case.

Catts *v.* Phalen et al.

"That the plaintiffs (Phalen and Morris) before the drawing of such lottery, employed the defendant (Catts) to perform the manual operation of drawing with his own hand, out of the lottery wheel prepared for the purpose, the tickets of numbers therein deposited by them, in order to be drawn thereout by the defendant, without selection and by chance, as each ticket of numbers successively and by chance presented itself to his hand when inserted in the wheel, and which tickets of numbers, when so drawn out in a certain order, were to determine the prizes to such lottery tickets as the plaintiffs had disposed of, or still held in their own hands, according as the tickets of numbers so drawn out corresponded with the numbers on the face of such lottery tickets respectively.

"That the defendant, before the drawing of the said lottery, and after he was employed to draw out the tickets of numbers as aforesaid, fraudulently procured and employed one William Hill to purchase of the plaintiffs, at their office in Washington, with money given by defendant to said Hill for the purpose, a certain ticket in the said lottery for him, the defendant, but apparently as for the said Hill himself.

"That the said Hill did accordingly purchase such ticket of the plaintiffs at their said office, apparently as for himself, and really for defendant, and with money furnished to said Hill by defendant as aforesaid, and delivered such ticket to defendant before the drawing of said lottery.

"That defendant, being in possession of such ticket so purchased for him as aforesaid, did, on the said          December, 1840, at the county aforesaid, undertake and proceed, in pretended pursuance and execution of his said employment in behalf of the plaintiffs, to draw out of the said lottery wheel, with his own hand, the said tickets of numbers, whilst at the same time he had fraudulently concealed in the cuff of his coat certain false and fictitious tickets of numbers fraudulently prepared by him, which exactly corresponded in numbers with the numbers on the face of the ticket so held by him as aforesaid, and fraudulently prepared in the similitude of the genuine tickets of numbers which had been deposited in the said lottery wheel for the purpose of being drawn out by defendant, without selection and by chance as aforesaid.

"That defendant, when, under pretence of drawing out such genuine tickets of numbers, he inserted his hand into the said lottery wheel, fraudulently and secretly contrived, without drawing out any

of the genuine tickets of numbers deposited in said wheel, to slip between his finger and thumb the said false and fictitious tickets of numbers before concealed in his cuff as aforesaid, and produced and exhibited the same to the agent of the plaintiffs, and other persons then and there present and superintending the drawing of said lottery, as and for genuine tickets of numbers properly drawn from the said wheel; by reason of which fraudulent contrivance, the number of the lottery ticket so purchased for defendant, and in his possession as aforesaid, was registered in the proper books kept for that purpose by the plaintiffs, as the ticket entitled to a prize of $15,000, so as to enable the holder of such ticket to demand and receive of the plaintiffs the amount of such prize, with a deduction of fifteen per cent.

"That the defendant afterwards, in the month of February, 1841, again fraudulently procured and employed the said Hill, in consideration of some certain reward to be allowed him out of the proceeds of such pretended prize, to present the said lottery ticket as a ticket held by himself to the plaintiffs, at their office in New York, and there demand and receive of them as for himself, but for defendant's use and benefit, payment of the said pretended prize, and for that purpose the defendant delivered the said lottery ticket to said Hill, who did accordingly present the same to plaintiffs at their said office, and then and there received of them, as for himself, and really and secretly for the defendant, the amount of such prize, with such deduction of fifteen per cent. as aforesaid."

Phalen and Morris brought an action in the Circuit Court against Catts to recover back the amount which was thus paid, viz.: $12,500. The declaration contained three counts, two of which were abandoned at the trial; the one retained being for money had and received by the defendant below (Catts) to the use of the plaintiffs.

The facts above set forth were not controverted, but the defendant relied upon a law of Virginia, (to take effect from the 1st of January, 1837,) passed for the suppression of lotteries; and also upon his being an infant, under the age of twenty-one years, when the lottery in question was drawn.

Whereupon the defendant prayed the court to instruct the jury as follows, to wit:

"If the jury shall believe, from the said evidence, that the said lottery was drawn under the said act of the commonwealth of Virginia, and the said contract so given in evidence as aforesaid, that then the

said lottery was illegal; and if plaintiffs paid the amount of said prize, under the belief that said ticket had been fairly drawn, the plaintiffs cannot recover.  And if the jury shall further believe, from the said evidence, that in December, 1840, when the said lottery was drawn, said defendant was an infant under the age of twenty-one years, that then the plaintiffs are not entitled to recover in this action."

Which instruction the court refused—to which refusal of the court the defendant excepts, and this, his bill of exceptions, is signed, sealed, and ordered to be enrolled, this 9th day of June, 1842.

The jury returned a verdict in favour of the plaintiffs for $12,500, to bear interest from 15th March, 1841.

Upon this exception, the case came up to this court.

*Coxe* and *Semmes*, for the plaintiff in error.
*Jones* and *Brent*, for the defendants in error.

The counsel for the plaintiff in error made the following points:

1. That the plaintiffs below made out no case establishing their right to recover—in other words, that they did not show any interest or property to be in them in the prize drawn on the said        day of December, 1840, which is in substance one of the prayers refused by the court, viz.: "if plaintiffs paid the amount of said prize, under the belief that said ticket had been fairly drawn, the plaintiffs cannot recover."

2. That the court erred in refusing to instruct the jury that, under the act of Virginia referred to, said lottery was illegal.  Plaintiff in error will contend that the lottery was illegal, and if so, that the plaintiffs below were not entitled to a verdict.

3. That the court erred in refusing to instruct the jury that the infancy of the defendant (the same being in evidence) was a bar to the plaintiffs' right to recover.

*Coxe*, for the plaintiff in error, said,

That if the lottery was prohibited by law, no contract under it could be sanctioned by law.  The question whether the prohibitory act of Virginia was constitutional, was decided in the highest court of that state, and brought up to this court, where it is now pending.  The court of Virginia decided that it did not impair the obligation of contracts.  1 Robinson, 713, Phalen *v.* Commonwealth.

In support of the general position above taken, he cited, 11 Wheat. 258, 265, 268.; 10 Bingh. 107; 5 T. R. 242; 2 Hen. Bla. 379; Carth. 252; 1 Maule and Selw. 596.

*Brent*, for the defendants in error.

As to the plea of infancy, although the action is *assumpsit*, yet the record shows fraud. 1 Esp. Rep. 172; 173; 2 Kent. Com. 240.

Infancy was shown at the time of drawing, but not when the money was received.

As to the illegality of the lottery:

This ticket was in fact never drawn, and therefore illegality cannot be affirmed.

This ticket was sold out of Virginia.

A contract is not void on account of the imposition of a penalty. 8 Wheat. 353; 1 Bayley, 315; 2 Hawes, 526.

[The counsel then examined the question of the illegality of the lottery, and the constitutionality of the prohibitory act, and cited, 12 Wheat. 70; Angell and Ames, 89; 4 Gill and Johns. 198, 144. 152; 9 Gill and Johns. 405; 3 Wash. C. C. R. 319; 6 Cranch, Fletcher and Peck.]

*Jones* was proceeding to argue on the same side, but the court expressed a desire to waive further argument, for the present, upon that side.

*Coxe*, in reply and conclusion, relied upon the illegality of the lottery, and the right of the legislature of Virginia to revoke its grant before any interests had become vested under it. The circumstance that the ticket was sold in Washington, made no difference, because lotteries were prohibited there also; and he cited 4 Wash. C. C. R. 129.

Mr. Justice BALDWIN delivered the opinion of the court.

Phalen and Morris brought an action in the court below, to recover from Catts the sum of $12,500, which they alleged he had received for their use, and being so indebted, promised and assumed to pay, to which the plaintiff plead the general issue.

It appeared in evidence on the trial, that the legislature of Virginia had authorized lotteries, to raise money for improving a turnpike road in that state, which were placed under the superintendence of commissioners appointed under those laws, who, by articles of agreement contracted with the plaintiffs to manage and conduct the draw-

ing of the lotteries authorized by the laws, on certain terms therein stipulated, one of which took place in Virginia, under the circumstances set forth in the statement of the case by the reporter.

In the argument for the plaintiff in error here, it has been contended that this lottery was illegal by the suppressing act of 1834, which precluded a recovery of the money he received; but as, in our opinion, this cause can be decided without an examination of that question, we shall proceed to the other points of the case, assuming for present purposes the illegality of the lottery.

Taking, as we must, the evidence adduced by the plaintiffs below, to be in all respects true after verdict, the facts of the case present a scene of a deeply concocted, deliberate, gross, and most wicked fraud, which the defendant neither attempted to disprove or mitigate at the trial, the consequence of which is, that he has not, and cannot have any better standing in court than if he had never owned a ticket in the lottery, or it had never been drawn. So far as he is concerned, the law annuls the pretended drawing of the prize he claimed; and in point of law, he did not draw the lottery; his fraud avoids not only his acts, but places him in the same position as if there had been no drawing in fact; and he had claimed and received the money of the plaintiffs, by means of any other false pretence, and he is estopped from avowing that the lottery was in fact drawn.

Such being the legal position of Catts, the case before us is simply this: Phalen and Morris had in their possession $12,500, either in their own right, or as trustees for others interested in the lottery, no matter which, the legal right to this sum was in them, the defendant claimed and received it by false and fraudulent pretences, as morally criminal as by larceny, forgery, or perjury; and the only question before us is, whether he can retain it by any principle or rule of law.

The transaction between the parties did not originate in the drawing of an illegal lottery; the money was not paid on a ticket which was entitled to, or drew the prize; it was paid and received on the false assertion of that fact; the contract which the law raises between them, is not founded on the drawing of the lottery, but on the obligation to refund the money which has been received by falsehood and fraud, by the assertion of a drawing which never took place. To state is to decide such a case; even if the instructions prayed by the defendant had been broader than they were. The instructions prayed were, 1. That if the jury believed from the evidence, that the lottery was drawn under the law of Virginia, and the contract referred to, then

the lottery was illegal; and if plaintiffs paid the amount of said prize, under the belief that said ticket had been fairly drawn, the plaintiff cannot recover. 2. That if the jury shall believe from the evidence, that in December, 1840, when the lottery was drawn, the defendant was an infant, the plaintiffs are not entitled to recover in this action.

A party cannot assign for error, the refusal of an instruction to which he has not a right to the full extent as stated, and in its precise terms; the court is not bound to give a modified instruction varying from the one prayed: here they were asked to instruct the jury, that the belief of the plaintiff that the ticket had been fairly drawn, and the consequent payment, prevented a recovery, without referring to the fact in evidence, that that belief was caused by the false and fraudulent assertions of the defendant.

The second instruction asked was, that the plaintiffs could not recover, if the defendant was a minor in December, 1840, which the court properly refused, because they were not asked to decide on the effect of his minority when the money was received in February, 1841; and because, if he had then been a minor, it would have been no defence to an action founded on his fraud and falsehood.

The first instruction, if granted, would have excluded from the consideration of the jury, all reference to the fraud which produced such belief in the plaintiff, and they must have given it the same effect, whether it was founded in fact, or caused by the false asseveration of the fact by the defendant, knowing it was a falsehood, and thus depriving the jury of the right to decide on the whole evidence.

The second instruction asked would, if granted, have also taken from the jury the right of finding for the plaintiff, if the defendant had been of full age when the fraud was successfully consummated by the receipt of the money, which was the only fact on which the law could raise a promise to repay, for certainly none could be raised at any previous time; so that had these instructions been given, the verdict must have been rendered for the defendant without taking into view the only evidence on which the plaintiff relied, whether it was available in law or not.

For these reasons, the judgment of the Circuit Court is affirmed, with costs.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Alexandria, and was argued

by counsel. On consideration whereof, It is now here, ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed with costs and damages, at the rate of six per cent. per annum.