HARTFORD–EMPIRE CO. v. SHAWKEE MFG. CO. et al. (two cases).

Nos. 9293, 9315.

Circuit Court of Appeals, Third Circuit.

Argued June 4, 1947.

Decided Aug. 14, 1947.

As Amended on Denial of Rehearing Oct. 1, 1947.

---

[10] § 3726, Title 26 U.S.C.A. Int.Rev. Code.

[11] § 646, Title 18 U.S.C.A.

See also 147 F.2d 532.

Max Swiren, of Chicago, Ill., and Wm. B. Jaspert, of Pittsburgh, Pa. (Irving R. Brand, of Chicago, Ill., on the brief), for appellant.

Walter J. Blenko and Albert C. Hirsch, both of Pittsburgh, Pa. (Stebbins, Blenko & Webb and Weil, Hirsch & Shumaker, all of Pittsburgh, Pa., and Sidney F. Parham, of Hartford, Conn., on the brief), for appellee cross-appellant.

Before McLAUGHLIN, O'CONNELL, and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These cross appeals are the aftermath of the Supreme Court decisions in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250, and Shawkee Manufacturing Co. et al. v. Hartford-Empire Co., 322 U.S. 271, 64 S. Ct. 1014, 88 L.Ed. 1269. Back in 1928 through gross fraud Hartford-Empire had obtained a certain "gob feeding" patent for use in the manufacture of glass containers. In the same year it sued Hazel-Atlas for infringement of the patent. The suit was dismissed in the District Court. The consequent judgment was reversed in 1932 by this Court [1] with the fraudulent foundation of the patent, a spurious article in a trade paper, in evidence in the matter, to some extent at least influencing the result. In 1933, Hartford sued the defendants for infringement of the same patent and the District Court, in view of the then outstanding Circuit judgment, upheld Hartford's claim. This Court affirmed for the same reason.[2]

In 1941 the fraud was finally brought into the open by the anti-trust prosecution of United States v. Hartford-Empire Co. et al., D.C.N.D.Ohio, W.D., 46 F.Supp. 541. As a result, a bill of review proceeding was commenced in this Court by the defendants. Relief was denied (one judge dissenting) on three grounds: (1) Because of the uncomplaining and inactive course pursued by the defendants and by Hazel-Atlas with respect to the said article though they had some knowledge thereof; (2) because the article had not been basic to the result arrived at by this Court; (3) because of lack of jurisdiction.[3] That decision was reversed by the Supreme Court, supra, in an opinion which scourged Hartford for its corruption and detailed the steps by which the District Court was to set aside its judgment in favor of Hart-

[1] Hartford-Empire Co. v. Hazel-Atlas Glass Co., 3 Cir., 59 F.2d 399.

[2] Shawkee Mfg. Co. et al. v. Hartford-Empire Co., 3 Cir., 68 F.2d 726.

[3] Hartford-Empire Co. v. Hazel-Atlas Glass Co. et al., 3 Cir., 137 F.2d 764.

ford, deny the latter all relief against infringement of the patent involved, "and permit Shawkee and the others to bring such further proceedings as may be appropriate in accordance with their prayer for relief." [322 U.S. 271, 64 S.Ct. 1015.]

In accordance with that broad command of the Supreme Court these defendants filed their counterclaims in the original District Court suit. Hartford's general defenses to the counterclaims were: 1. That there had been a settlement between the parties which was dispositive of the entire litigation; 2. that the statute of limitations barred the claims; 3. that the finding of fraud by the Supreme Court was not binding upon the District Court. After trial, the lower Court rejecting those defenses ordered restitution of amounts paid by the defendants to Hartford because of the direct order of the injunction decree. Recovery was denied to the defendants on all other items of the counterclaims. 67 F.Supp. 26. The defendants in Number 9293 appeal from that part of the judgment. In Number 9315, Hartford-Empire appeals from that part of the decision which rejected its above mentioned defenses and found for the counterclaimants on those sums paid to Hartford because of the express direction of the injunction decree.

■ Hartford asserts that the settlement on the accounting in connection with its original judgment amounts to a settlement subsequent to and in place of the fraudulently secured judgment. Much law is cited to show that fraud cannot later be used to upset such a settlement. That law is not disputed. But the settlement here was not in place of a judgment. It was in place of a sum found due on an accounting which was itself merely a part of and a compliance with the fraudulently secured judgment. As the District Court correctly held, that settlement and accounting collapse with the judgment and the monies secured thereby must be returned, with interest.

■ The second contention by Hartford is that the counterclaims are out of time since they were not filed till more than eleven years after the commencement of the suit which resulted in the permanent injunction of October 19, 1934. This is completely answered by the Supreme Court opinion in Shawkee, supra, 322 U.S. at page 273, 64 S.Ct. at page 1014, 88 L.Ed. 1269, where the Court finds that there was no direct proof of Hartford's fraud available until "after the United States offered its evidence in the anti-trust suit in 1941." The District Court quite properly found as a fact that the defendants proceeded with due diligence to obtain relief from the injunction decree "after obtaining due proof that Hartford-Empire Company had committed said fraud."

■ The third of Hartford's main general defenses is that the finding of fraud by the Supreme Court should not have been considered final by the District Court and should have been relitigated. It is difficult to follow the argument advanced in support of that proposition. Fraud was the basis of the petition filed by the defendants in this Court. Hartford denied the fraud. The Supreme Court said in the Hazel-Atlas opinion, supra, 322 U.S. at page 245, 64 S.Ct. at page 1001, 88 L.Ed. 1250, "Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals." As the result of the findings, of fraud and of timeliness in the prosecution thereof (with the findings applying equally to both the Hazel-Atlas and to the Shawkee cases), the Supreme Court ordered that Hartford be denied all relief against infringement of the particular patent. Those findings were necessary to the decisions of the Supreme Court, for, as Mr. Justice Black said in the Hazel-Atlas opinion, 322 U.S. at page 245, 64 S.Ct. at page 1001, 88 L.Ed. 1250, "Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments." The present suggestion that other evidence would make it impossible to infer fraud was submitted in substance to the Supreme Court in Hartford's applications for rehearing which were denied. Plainly, the fraud issue was litigated in this Court and in the Supreme Court and was finally disposed of by the latter tribunal. In line with our decision in Hartford-Empire Co. v. Shawkee Mfg.

Co., 3 Cir., 147 F.2d 532, at page 536, the District Court was entirely justified in so determining and in refusing to permit Hartford to reopen that question.

In addition to the sums paid to Hartford in the accounting proceeding which were allowed by the lower Court, the other elements of the counterclaims which are pressed on the appeal of the injured parties are:

1. Return of royalty fees paid under contracts to Hartford for the use of Hartford controlled feeders after the use of the royalty free feeders had been enjoined. (Glenshaw and McKee).

2. Litigation and traveling expenses and disbursements in connection therewith. (All three counterclaimants).

3. Non-royalty feeder dismantlement expense. (Glenshaw and McKee).

4. The damage to Glenshaw for the loss of its fruit jar business.

5. The damage to Shawkee for the loss of its feeder sales.

6. Exemplary damages. (All three counterclaimants).

All of these claims were denied by the District Judge who characterized them as damages in distinguishing them from the accounting sums allowed as restitution. The Court did not think that they were losses suffered as a result of literal compliance with the injunction decree. The fact that no bond had been given by Hartford upon the issuance of the injunction weighed heavily with the Trial Judge who held that in such a situation the defendants could not recover unless the original action by Hartford was a malicious prosecution. The District Court finding was that the Hartford suit lacked important elements of malicious prosecution in that it "was not instituted for mere vexatious purposes but in the definite hope of judgment." The Court so held because it had reached the conclusion that Hartford had every reason to believe "that its fraud had been deeply and safely buried."

Though the royalty payments were not made by reason of any direct order of the injunction decree, under the evidence there can be no doubt but that it was the decree which forced Glenshaw and McKee to resume use of the Hartford feeders. This is conceded by the District Court opinion which says, "True, in the exercise of sound business judgment it was probably necessary for Glenshaw and McKee, as the most practicable alternative, to go back to the use of Hartford's feeders after the injunction," and further, "The recourse to them [Hartford's feeders] after the decree was doubtless undesired by Glenshaw et al * * * ." And it is strongly supported by the record which shows that at the time the permanent injunction had been entered, five out of eight of Glenshaw's Howard and Hartford feeders had been supplanted with Shawkee feeders which latter were handling 65% of Glenshaw's production. The testimony is also that McKee, despite difficulty experienced in its early use of the Shawkee feeder, would have replaced its two Hartford machines except for the injunction. Hartford contends that the royalty free feeders were not as efficient as those controlled by Hartford. There is much testimony on this pro and con and no specific finding by the Trial Court on the merits of the respective feeders. However, we do think that the clear weight of the evidence, as indicated, is that but for the injunction the Hartford feeders would have been superseded by non-royalty machines. The injunction stopped all that and forced Glenshaw and McKee to retain their old royalty contracts with Hartford (which otherwise could have been terminated) and to renew them at their expiration. The enforcement therefore of Hartford's fraudulent patent resulted in certain royalty payments to the former by McKee and Glenshaw which otherwise would not have been made. The cause of action arising is not one calling for compensatory damages but is squarely under the doctrine of restitution. Restatement, Restitution, Section 1 et seq.; General Casmir Pulaski B. & L. Ass'n v. Providence Trust Co., 338 Pa. 198, 12 A.2d 336.

The leading case on this point, insofar as the precise facts before the Court are concerned, is Arkadelphia Milling Co. v. St. Louis Southwestern R. Co., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517. The defendant railroads there involved had, on

constitutional grounds, enjoined a state from fixing lower freight rates. Upon the dissolution of that injunction after a reversal by the Supreme Court of the Trial Court's decree granting it, the shippers sought restitution of the difference between the rates they had paid during the period of validity and the lower rates fixed by the state. In granting such restitution, the Supreme Court said, at page 145 of 249 U.S., at page 241 of 39 S.Ct.:

"As to that portion of the claims which accrued after the final decrees, this, as we already have held in the McKnight Case [St. Louis, Iron Mountain & Southern Ry. Co. v. McKnight], 244 U.S. 368, 374, 37 S.Ct. 611, 61 L.Ed. 1200, was not recoverable upon the injunction bonds, nor against the sureties therein. On a fair construction of the conditions of those instruments, their obligation expired by limitation when the suits were brought to a final conclusion. Hence, to the extent that the supplemental decree now under review awards a recovery against the sureties for claims accruing after the final decrees, it must be modified.

"But, in our opinion, this portion of the claims is allowable against the railway companies themselves upon the principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby. This right, so well founded in equity, has been recognized in the practice of the courts of common law from an early period. Where plaintiff had judgment and execution, and defendant afterwards sued out a writ of error, it was regularly a part of a judgment of reversal that the plaintiff in error 'be restored to all things which he hath lost by occasion of the said judgment'; and thereupon, in a plain case, a writ of restitution issued at once; but if a question of fact was in doubt, a writ of scire facias was first issued. Anonymous, Salk, 588; citing Goodyere v. Ince, Cro.Jac. 246; Sympson v. Juxon, Cro.Jac. 698; Vesey v. Harris, Cro. Car. 328. See, also, Lil.Ent. 641, 650; Arch.Append. 195, 200. The doctrine has been most fully recognized in the decisions

of this court. Bank of the United States v. Bank of Washington, 6 Pet. 8, 17, 8 L. Ed. 299; Erwin v. Lowry, 7 How. 172, 184, 12 L.Ed. 655; Northwestern Fuel Co. v. Brock, 139 U.S. 216, 11 S.Ct. 523, 35 L.Ed. 151.

"That a course of action so clearly consistent with the principles of equity is one proper to be adopted in an equitable proceeding goes without saying. It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process. Northwestern Fuel Co. v. Brock, 139 U.S. 216, 219, 11 S.Ct. 523, 35 L.Ed. 151; Johnston v. Bowers, 69 N.J.L. 544, 547, 55 A. 230.

"It is argued that the claimant is not in a position to invoke the principle of restitution in this proceedings because it was not a party to the original proceedings, but came in by intervening before the master. This point is unsubstantial. The Railroad Commission, in defending the rate schedules against the attack of the railway companies, represented all shippers; the permanent injunctions that were awarded by the final decrees restrained all shippers from taking advantage of the commission rates; and during the time that those decrees remained unreserved the railway companies obtained the benefit of the injunction by exacting from this claimant, among others, in addition to the commission rates, those excess charges that form the basis of the present claims. It is a typical case for the application of the principle of restitution; and the District Court properly held the commission to be the representative of the shippers for this purpose."

The question of an injunction bond was expressly held not determinative. The payments for which restitution was granted were originally made because of the injunction but were not expressly ordered by the injunction decree. Indeed, they could not have been, because the injured shippers there were as free to go out of business as the injured glassmakers here; they were just as free to transport their goods by other methods than railroads as these injured

glassmakers were to make their glass by hand. Moreover, the fact that the Arkadelphia case was a carrier matter will not serve to distinguish it from the case at bar, since, as Justice Pitney stated in the above quoted portion of his opinion, the rule he used was "long established and of general application."

Therefore whatever portion of the royalties plus interest to which they are entitled must be repaid to Glenshaw and McKee. Nor is the Arkadelphia case a lone precedent for that law. Baltimore & Ohio R. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954; United States v. Morgan, 307 U.S. 183, 197, 59 S.Ct. 795, 83 L.Ed. 1211.[4]

In reaching a contrary conclusion the Court below relied on Greenwood County v. Duke Power Co., 4 Cir., 107 F.2d 484, 131 A.L.R. 870, certiorari denied 309 U.S. 667, 60 S.Ct. 608, 84 L.Ed. 1014. But the facts of that case are altogether inapplicable here, nothing having been obtained by the party securing the injunction of which "restitution" could be made and no basis appearing for even assessing possible damages. It followed no finding of "fraudulent conduct" by the highest court in the land. It did mention, by way of dicta, an old distinction between honest plaintiffs and those guilty of malicious prosecution. But such a distinction is not relevant to the law regarding restitution and fraud already set forth. It is inappropriate on a point where conscience and law are unanimous in condemning unjust enrichment. Cf. Restatement, Restitution, Section 1, cited above. It is a technicality which cannot gloss over "the obligation to refund * * * money which has been received by falsehood and fraud * * *." Catts v. Phalen, 2 How. 376, 380, 43 U.S. 376, 380, 11 L.Ed. 306.

The District Court has found as facts the specific amounts of the royalty payments by Glenshaw and McKee after the permanent injunction which prohibited the use of non-royalty feeders. On the present state of the record, however, it is impossible to decide whether reimbursement should be made of those full amounts. There may be elements which might possibly affect the amounts of royalties to be refunded and we express no opinion as to this. Testimony should be taken in the District Court on the question and the specific amounts of royalties to be refunded, determined by that Court.

The remainder of the claims, expenses of litigation, losses in connection with the non-royalty feeders, loss of business and punitive damages do not come under the rule of restitution and if recoverable at all, are recoverable as damages.

■ The Court below refused to allow counterclaimants legal and traveling expenses and incidental disbursements because of the conclusion that Hartford's original suit was not a malicious prosecution. Hartford defends that decision by referring to cases which hold such expenses unrecoverable under an injunction bond. Neither ground recognizes the claim for what it really is, namely, damages sustained through Hartford's fraud and hence enforceable against the latter. Catts v. Phalen, supra; Kraemer v. Graf, 10 Cir., 105 F.2d 117, 122; Smith v. Bellows, 77 Pa. 441. Logically the costs borne by Glenshaw and McKee in dismantling the non-royalty feeders are in the same category as the legal expenses and are awarded under the same rule. The amounts of those costs and of the legal, travel and incidental expenses were found as facts by the District Court.

■ The claim for loss of profits on behalf of Glenshaw because the injunction prohibited that company from using the Shawkee feeder in the manufacture of fruit jars was denied by the Court below on the same ground as the litigation expense and royalty demands and on the additional ground, carefully considered by the District Judge, that the proof offered to support it "takes us into a field of pure

---

4 Only one Pennsylvania case is cited in this connection, Gould v. McFall, 118 Pa. 455, 457, 12 A. 336, 337, 4 Am.St.Rep. 606. There it is said that restitution need not be granted where a payment is made through error. But the court went on to exclude such a situation as the present one, saying, "We are not now considering the line of cases where the process of the law has been abused for the purpose of extortion * * *."

speculation." It is true that vigorous argument is made on behalf of Glenshaw that its proof was adequate on this branch of the case, but since our own examination of the record reveals substantial justification for the District Judge's conclusion regarding this largely factual problem—that the evidence as to this business loss was too speculative—we must sustain that finding.

Shawkee's claim for loss of feeder business was also found to have been speculative, with the Court below saying, "It was but an attempt to enter the manufacture of glass feeders." Since the record again gives a firm basis for that decision of a fact question, we are bound by it.

■ The remaining claim submitted on this appeal is for punitive damages. This was denied by the District Judge solely because he considered that Hartford's action did not partake of the elements of malicious prosecution. That reason as above shown is inapplicable.

The seriousness, the long duration and the aggravated character of the fraud which has necessitated this litigation is set forth in the cited opinions of the Supreme Court. In those circumstances, the trial court has power to inflict such damages, " 'having in view the enormity of * * * [the] offense rather than the measure of compensation * * *.' " Denver & Rio Grande Ry. v. Harris, 122 U.S. 597, 609, 7 S.Ct. 1286, 1290, 30 L.Ed. 1146. The federal cases on this subject require, of course, that fraud and deceit be shown on the part of the litigant subject to the damages. Scalise v. National Utility Service, Inc., 5 Cir., 120 F.2d 938; Greene v. Keithley, 8 Cir., 86 F.2d 238. The Pennsylvania cases require wilfulness on the part of the wrongdoing party. Thompson v. Swank, 317 Pa. 158, 159, 176 A. 211; Wright v. Philadelphia Rapid Transit Co., 236 Pa. 132, 84 A. 669. But wilfulness, "evil intent" and "wrong motive" (the Wright case, 236 Pa. at page 135, 84 A. 669) were necessarily present in this miserable fraud of which Hartford has been found guilty.

This case calls for such damages although it is for the District Court, as the trier of fact, to assess them, taking into consideration the whole wretched scheme as ascertained and etched in unmistakable terms by the Supreme Court.

So much of the judgment below as was appealed from in Number 9315 will be affirmed. The fraud is res adjudicata, as the Trial Court found. The monies paid to Hartford in the settlement under the accounting were properly ordered returned, with interest.

So much of the judgment below, appealed from in Number 9293, as concerns the damages from loss of fruit jar business by Glenshaw and the damages from loss of business by Shawkee, will be affirmed for the reasons stated.

The remainder of the judgment appealed from in Number 9293 will be reversed and remanded to the District Court for liquidation, where necessary, and award, to the injured parties in accordance with this opinion.