## MIKE PENTELUK v. ALBIN STARK.[1]

April 15, 1955.

No. 36,468.

---

[1]Reported in 69 N. W. (2d) 899.

*Scott, Burke & Scott,* for appellant.
*Ryan, Ryan & Ebert,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The accident which is the subject of this litigation occurred in Crow Wing county on October 18, 1952, as plaintiff was attempting to pass defendant on state aid road No. 3 and defendant made a left turn in front of him. The jury returned a verdict for plaintiff.

On appeal, it is the position of defendant that the court should have instructed the jury that plaintiff was guilty of contributory negligence as a matter of law in that he did not sound his horn as he attempted to pass.

M. S. A. 169.68 reads in part:

"* * * The driver of a motor vehicle shall, when reasonably necessary to insure safe operation, give audible warning with his horn, but shall not otherwise use such horn when upon a highway."

Section 169.18, subd. 3(2), provides:

"Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible warning, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle;"

It is defendant's position that, when the legislature enacted the language "Except when overtaking and passing on the right is permitted," it established a duty to warn the overtaken driver upon passing and that the performance of this duty always is reasonably necessary within the meaning of the statute.

It is clear that, before the words quoted by defendant were added to § 169.18, subd. 3(2), a driver of a motor vehicle upon a public highway, when about to overtake and pass another from the rear, was not required to give a signal by horn or otherwise unless ordinary care would have required him to do so. Dziewczynski v. Lodermeier, 193 Minn. 580, 259 N. W. 65. It must be noted that, at the same time that the legislature added the words upon which defendant bases his contention for a new interpretation of § 169.18, subd. 3(2), it also enacted L. 1937, c. 464, § 35(b), which reads:

"The driver of a vehicle may overtake and, allowing sufficient clearance, pass another vehicle proceeding in the same direction either upon the left or upon the right on a roadway with unobstructed pavement of sufficient width for four or more lines of moving traffic when such movement can be made in safety."

The above provision has been incorporated substantially into what is now § 169.18, subd. 4. That act allows a vehicle to pass on the right (and left) on four-lane highways when such could be done in safety.

In our opinion the words "Except when overtaking and passing on the right is permitted" were added to § 169.18, subd. 3(2), to remove an inconsistency which would have existed without them after L. 1937, c. 464, § 35(b), had been enacted. To establish an absolute duty in all cases on the part of an overtaking vehicle to sound its horn when passing another vehicle, the legislature could have done so quite simply by stating that an overtaking vehicle must sound its horn in all cases when passing another vehicle. Instead, it said that such a driver was required to give audible warning with his horn only when reasonably necessary to insure safe operation. § 169.68.

Therefore, we believe that the rule of Dziewczynski v. Lodermeier, 193 Minn. 580, 259 N. W. 65, still is the law in this state and, thus, whether or not plaintiff in this case should have given some audible warning of his intention to pass defendant clearly was a question for the jury.

The second issue is raised by defendant's third assignment of error, which is that the court erred in submitting to the jury the issue of permanent damage to plaintiff.

It appears that plaintiff had injured his knee in 1920, and, while, according to him, it bothered him only slightly just before the accident and did not affect his work, it is also apparent from the record that an arthritic condition did exist in the knee for some time prior to the accident. It further appears that before the accident plaintiff was a high-strung person and had undergone an operation for ulcers in October 1951. However, plaintiff's doctor testified that in July 1952, three months before the accident happened, plaintiff's condition was very good. He had gained weight, was having much less difficulty with his arthritis, and was able to do "hard labor type of work."

It is the contention of defendant that the evidence failed to show a permanent aggravation of a pre-existing arthritic condition of the knee or the extent thereof. Defendant further claims, with respect to the second contention of plaintiff that he suffered an aggravation of a pre-existing nervous condition, that the doctor's testimony at no time bore upon the permanent effect of the aggravation of the nervous condition as caused by this accident.

The rule is that for a person to recover for permanent injuries it must appear to a reasonable medical certainty that there will be permanent injury. Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793; McBride v. St. Paul City Ry. Co. 72 Minn. 291, 75 N. W. 231; Crozier v. Minneapolis St. Ry. Co. 106 Minn. 77, 118 N. W. 256; Carson v. Turrish, 140 Minn. 445, 168 N. W. 349, L. R. A. 1918F, 154; Gau v. J. Borgerding & Co. 175 Minn. 150, 220 N. W. 412; Romann v. Bender, 190 Minn. 419, 252 N. W. 80.

Thus, the issue for our decision is whether there is sufficient evidence in the record of a permanent aggravation of plaintiff's previous infirmities to have submitted the issue to the jury. In determining this issue we must consider and state the evidence in the light most favorable to plaintiff. Cameron v. Evans, *supra.* We have carefully considered the record in this case but deem it unnecessary to go into a detailed discussion of all the evidence bearing upon this issue. An

examination of the record reveals that the only medical testimony in the case was that of plaintiff's doctor.

In ascertaining the meaning of the testimony of an expert the rule is that the meaning must be drawn from the entire testimony of the witness and not from isolated portions of it. It is for the jury, not the court, to determine the weight to be given to the testimony of a witness and to decide what such testimony proves. Cameron v. Evans, *supra;* Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685; Klingman v. Loew's Inc. 209 Minn. 449, 296 N. W. 528; Sankiewicz v. Speckel, 209 Minn. 528, 296 N. W. 909; Kivak v. G. N. Ry. Co. 143 Minn. 196, 173 N. W. 421; Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49; Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; 6 Dunnell, Dig. & Supp. §§ 10343a, 10344.

The trial court recognized in its memorandum the importance of the expert's knowledge and training and his opportunities to observe that to which he had testified. In the instant case, plaintiff's doctor testified that he had attended plaintiff for a period of a year and five months before the accident and one year and four months after the accident. He is a graduate of the University of Minnesota School of Medicine, with active practice of general medicine since 1938. He had performed plaintiff's previous surgery and had observed his recovery up to the time of the accident. He had treated plaintiff for his knee injury and had observed his physical and nervous condition since the accident. The doctor testified quite positively that the accident aggravated plaintiff's already existing arthritis and also resulted in a tearing of the collateral ligaments and a dislocation of the cartilage. It was his feeling that the knee was permanently disabled, and, comparing it to the other knee, he stated that it still was of a 90-degree angle of limitation. The doctor also testified with reference to the permanent nature of the knee injury that it was a traumatic arthritis, with a pre-existing osteoarthritis which had been exaggerated and accentuated by the injury, and that he could say with reasonable medical certainty that this condition was permanent. With respect to plaintiff's pre-existing nervous condition, the doctor testified that following the surgery plaintiff was feeling very well;

that good results had been obtained; but that the accident had blown him all apart and had caused him to become nauseated and to lose weight. He also stated that the accident had put plaintiff into a state of nervous shock from which he had a hard time recovering and that the difficult time plaintiff had with his stomach definitely had been aggravated by and was connected with the accident. While the doctor did state that it was difficult in any type of nervous shock to know whether it would be permanent or not, he did not think that plaintiff would ever be able to handle his previous work with ease again.

Having viewed this testimony as a whole and in the light most favorable to plaintiff, we cannot say that the trial court erred in submitting this issue to the jury. We come to this conclusion also in view of the fact that the trial court in its charge to the jury quite clearly cautioned it that there was evidence of a past knee injury as well as a past stomach ailment and that plaintiff could not recover for these past injuries or any injuries, pain, suffering, or loss of time and earnings which were not proximately caused by this accident.

It is therefore our opinion that the order of the trial court should be affirmed.

We have considered the other issues raised by defendant, but we deem it unnecessary to further discuss them in view of our opinion herein.

Affirmed.