William J. CHERRY, Appellant,

v.

Lois E. STEDMAN, Appellee.

No. 15873.

United States Court of Appeals
Eighth Circuit.

Sept. 24, 1958.

Robert J. King, Minneapolis, Minn. (Ray G. Moonan, Minneapolis, Minn., on the brief), for appellant.

John H. McGuigan, St. Paul, Minn. (Thomas J. Battis, McGuigan & McGuigan, and Murnane & Murnane, St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

JOHNSEN, Circuit Judge.

The jury, in a Minnesota auto-collision case, awarded the plaintiff $13,500 damages, as well as finding against the defendant on his counterclaim. The court entered judgment on the verdict, and the defendant has appealed.

His first contention here is that the plaintiff was guilty of contributory negligence as a matter of law, and that the trial court therefore erred in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

The collision occurred on July 5, 1956, about 8 o'clock a. m., in clear weather and on dry pavement, at the place where Minnesota Highways 100 and 61 intersect, near the village of Newport. No. 61 is an arterial, four-lane, divided highway, running in a northerly and southerly direction, with a speed zone for the immediate locality of not exceeding 50 miles per hour. No. 100 is a two-lane highway, which approaches No. 61 from the west and merges with it, there being no continuation of No. 100 to the east of the intersection. A stop sign is located on No. 100, at a point varyingly estimated in the testimony, from 12 to 25 feet west of the intersection.

Defendant was driving his Chevrolet car south on No. 61. Plaintiff was driving her Nash Rambler eastward on No. 100, toward No. 61. The south half of the pavement on No. 100, beyond the stop sign, has a curved widening or extension, to facilitate the making of a right turn into No. 61.

There was evidence entitling the jury to find that plaintiff had stopped her car fully at the stop sign and made observation to the north; that she thereafter started up and proceeded at a speed of 5 to 10 miles per hour toward No. 61, looking to the north again as she advanced beyond the stop sign, taking cognizance of the position of defendant's car and judging its distance at that time to be approximately 1,000 feet away; that defendant's car thus appeared to her to present no hazard to the continuing of her course into the southbound lanes of No. 61; that she accordingly consideredly proceeded, at moderate pace and without any impulsive spurt onto the highway,

but simply rounding the curved extension of No. 100, and heading angularly into No. 61; that the course of her car and its speed were at all times visible to defendant, as she proceeded forward from the stop sign, and there was no other traffic in the southbound lanes or at the intersection; that plaintiff's car was struck on its left side by the front end of defendant's car, as she was moving into the westerly southbound lane; and that, before it so struck plaintiff, defendant's car had been skidding forward, with set brakes, in a straight path, for a distance of almost 100 feet.

▮ Minn.Stat.Ann. § 169.20, subd. 3, as here pertinent, provides: "The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway".

It will be noted that under this statute the driver on a through highway is not granted an unqualified, paramount right to proceed. The statute subordinates the right of one desiring to enter or cross the through highway at an intersection, to that of drivers upon such highway, only to the extent of requiring the former to stop at the entrance to the highway and to yield the right of way to any vehicle which has entered the intersection from the through highway or which is approaching so closely on the through highway as to constitute an immediate hazard. When a driver has thus stopped and has yielded the right of way to a vehicle on the highway which is entering the intersection or which is approaching at such proximity as to constitute an immediate hazard, he is accorded the right to proceed, "and the drivers of all other vehicles approaching the intersection on

the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway".

▮ The accident here, as has been indicated, occurred in a 50-mile speed zone; and the witnesses who testified directly as to defendant's speed estimated that he was not exceeding this limit at the time. But, if as plaintiff testified and as the jury was at liberty to believe, defendant's car was approximately 1,000 feet away when plaintiff started up from the stop sign, the jury could properly conclude that defendant's car, unless it was proceeding at a speed of more than 50 miles per hour, could not have come into collision with plaintiff's car, nor would it have constituted a hazard to her, during such period as would be consumed by her in traveling the 12 to 25 feet from the stop sign and getting her car swung into and duly positioned on the southbound lane, even if all of this was being done by her at a speed of only 5 miles per hour.

In this connection, the jury may perhaps also have considered the force with which plaintiff's car had been struck, notwithstanding that defendant's car had moved forward, apparently with locked wheels, for a distance of approximately 100 feet, as well as the position to which its momentum similarly had carried it after the impact. See Frank v. Stiegler, 250 Minn. 447, 84 N.W.2d 912. And in relation to all these aspects, it may be that the jury further saw corroborative implication in the circumstance that defendant was at the time on his way to work and had admittedly, on the postholiday morning involved, gotten a later start than was his wont.

Whether actually the jury was right or wrong in its appraisal of the speed fact, we think that there was sufficient probative substance to allow the jury to become persuaded that defendant was traveling at an excessive rate of speed and that this had been a proximate factor in the accident. In this situation, the jury could legitimately find that plaintiff had engaged in sufficient observation, and had taken appropriate cognizance of

the superior rights recognized by the statute, so that she was not guilty of contributory negligence in what she did. This is not a case, such as Olson v. Anderson, 224 Minn. 216, 28 N.W.2d 66, where there was an ignoring of a stop sign, or, as commented above, one where, after observance of stop-sign obligation, there had been a sudden and impulsive spurt onto the highway. In the jury's acceptance of plaintiff's version of the facts, it had the right to find that plaintiff properly could and did believe that she was confronted with no immediate hazard and that she was entitled under the statute to proceed. Defendant's artificial increase of the hazard through unlawful speed left him without right to expect subordinancy on the part of plaintiff to his improper action—at least not without awareness thereof by her, so that she could anticipate the peril created thereby. And whether that awareness existed would practicably be a risk that defendant would be taking, if he did not yield to her the right of way.

The Minnesota Supreme Court has said: "Under our existing statutes, after a car has once stopped for a through street in response to a stop sign and the motorist has exercised the ordinary and reasonable care required under § 169.20 subd. 3 [supra], before entering commensurate with the care required under the circumstances, the usual rules in regard to right of way and speed prevail * * *. The driver on the through street cannot ignore the statute on speed restrictions * * *; and if a driver upon an arterial highway travels at an unlawful speed across a street intersection, he forfeits the right of way which he might otherwise have * * *. Once the motorist entering upon the arterial highway or through street has stopped and used due care as to vehicles in or near the intersection, he may proceed with the benefit of the right of way and is not negligent if an accident occurs. * * * Whether a driver is justified in assuming that an approaching vehicle will stop or slow down for him is ordinarily a question for the jury". Kolatz v. Kelly, 244 Minn. 163, 69 N.W.2d 649, 655–656.

■ What we have earlier said, as to the right of the jury to find that defendant was traveling at an excessive speed, sufficiently disposes also of defendant's second contention here, that the court erred in submitting as a question of negligence the matter of unlawful speed on the part of defendant. Defendant corollarily, in substance, argues, however, that it was error for the court in this situation to have failed to instruct the jury that defendant was entitled to proceed upon Highway 61 at a speed of 50 miles per hour and that in his so doing, unless some special hazard was manifest beyond the mere fact that plaintiff's car was approaching toward the entrance to the highway, defendant would be free from negligence as a matter of law.

The court set out in its instructions the Minnesota "basic rule" statute, § 169.14 subd. 1, that "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care".

■ While we think that defendant ordinarily would have been entitled to have the jury told in the instructions that the zone speed where the accident occurred was 50 miles per hour and that a use of such speed by defendant on the highway would be abstractly or prima facie lawful, defendant is not in a position to complain that no such instruction was given. The instructions which he requested relating to a 50-mile speed were so framed as specifically to premise or imply to the jury that he was not in fact driving in excess of this speed, and hence they were on this ground alone not required to be given by the court.

■ A party cannot claim error in the refusal to give a requested instruction

which is not entirely correct, or which it is not possible to give without qualification, or which is so framed as to be capable of being misunderstood. Baltimore & O. R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12, 18; Metzger v. Hossack, 8 Cir., 165 F.2d 1; Chicago G. W. R. Co. v. Robinson, 8 Cir., 101 F.2d 994; Catts v. Phalen, 2 How. 376, 43 U.S. 376, 11 L.Ed. 306; Guerini Stone Co. v. P. J. Carlin Const. Co., 240 U.S. 264, 283, 36 S.Ct. 300, 60 L.Ed. 636.

Beyond this, the evidence in the present situation had made it clear that a speed zone of 50 miles was involved, and the prima facie significance of such a through-highway speed provision would seem to be in this peripatetic age a matter of common motorist experience and understanding. Hence, we should think that, even without properly requested and given instruction, a jury could be expected to recognize and take into account that a general speed by defendant of 50 miles per hour would be prima facie or abstractly lawful.

■ Defendant's next contention is that the court erred in refusing to give an instruction on the Minnesota emergency rule, which he both tendered and otherwise requested. The instruction tendered was a correct statement of the Minnesota rule, that "one who is suddenly confronted by a peril through no fault of his own, who in an attempt to escape does not choose the best or safest way should not be held negligent because of such choice unless it was so hazardous that the ordinarily reasonable and prudent person would not have made it under the same or similar circumstances".

Presumably the trial court felt that, if defendant was confronted with any sudden emergency, such emergency was one in which his own excessive speed necessarily must have been a creative or contributive factor. But the question of whether or not defendant had been proceeding at an excessive speed was on the evidence one of fact for the jury and not one of law, so that the court could not on that ground regard the emergency rule

as inapplicable. The jury could have refused to believe plaintiff's testimony as to the position of defendant's car at the time she started up from the stop sign, and so have found that defendant had not been guilty of any improper speed in relation to the impact. It might also have found that plaintiff's car had moved into the intersection and into the path of defendant's car at a time when he had a right to believe that she would stop and yield the right of way to him. Plaintiff herself testified that, at the speed with which she moved her car over the 12-to-25-feet distance between the stop sign and the intersection, she could have halted her car within a space of a foot or two.

The possible emergency aspect is, however, of more direct significance in relation to another element of the situation. One of the theories on which plaintiff sought to predicate liability was that defendant's car had hit her automobile straight-on, and that if he had swung his car to the left, into the other southbound lane, he could have avoided the collision. In plaintiff's insistence on this theory, it might be that the jury found that defendant was not under the circumstances required to have anticipated plaintiff's entrance into the highway, but that, as this was occurring, he nevertheless, as a matter of observation, had the opportunity to and should have swung his car over into the left traffic lane.

On this basis, whether plaintiff's entrance into the highway and into defendant's path constituted such an emergency as not to charge him with responsibility for having failed to make the safest choice, in allowing his car to skid straight ahead instead of attempting to veer it to the left, would, it seems to us, entitle defendant to have the requested instruction given. What was said in Zickrick v. Strathern, 211 Minn. 329, 1 N.W.2d 134, 136, is apposite here: "The (emergency) rule is applicable only if it be first determined that there existed a real peril * * * and that the negligence of the party seeking to invoke it did not con-

tribute thereto * * *. In this case the existence of these conditions precedent were questions of fact".

Defendant's fourth contention is that the court erred in not withdrawing from the jury the question of the permanency of plaintiff's injuries. The medical testimony was not satisfactory in this respect. Plaintiff complained primarily of continued arm numbness and neck stiffness, as well as other general aches and pains and limitations upon the movements and actions in which she had previously been able to engage. But plaintiff's doctor did not testify that these conditions would be permanent. In fact, only the doctor who had cared for plaintiff while she was in the hospital in Minnesota was called as a witness. There was no testimony, by deposition or otherwise, on the part of the doctor who had attended her after her return to her home in Illinois.

The Minnesota doctor testified only to the conditions which existed at the time of the accident and of his treatment of them, until her discharge from the hospital. He did not state that any of the things for which she was treated and discharged by him from the hospital would in his opinion result in permanent injury and disability to her. He was not shown to have made any examination of her subsequently, in relation to the trial. When plaintiff's counsel attempted to ask him, apparently hypothetically, how long he thought the numbness in plaintiff's arm and the restricted motion in her neck, as testified to by her, would remain, he answered that he didn't believe that he could very accurately estimate. Whether this was because of the fact that he had made no examination to determine whether the numbness and restriction complained of actually existed, neither his answer nor any subsequent questioning of him reveals.

█ But we need not labor the matter, for we assume that on another trial these aspects will be more carefully and sufficiently developed. Under Minnesota law—"To entitle a plaintiff to damages for the apprehended continuance in the future of the consequences of an injury, the burden is on him to show with reasonable certainty that such consequences now exist and will continue in the future, and the nature and *probable duration thereof*". (Emphasis supplied.) Lowe v. Armour Packing Co., 148 Minn. 464, 182 N.W. 610, 611. The certainty required to be made to appear as to permanence is "a reasonable medical certainty". Penteluk v. Stark, 244 Minn. 337, 69 N.W.2d 899.

Defendant's other contentions are without reversible merit and do not call for discussion. Thus, one of them is an attempt to obtain a reversal for alleged excessiveness of the verdict, with no element appearing in the record which might prompt a jury to passion-or-prejudice action. Our numerous and consistent decisions, holding that excessiveness is not in such a situation a question for appellate consideration, need not be repeated here.

Reversed and remanded for a new trial.