## SMITH ET AL. *v.* ASSOCIATED TRANSPORT, INC.

[No. 8, October Term, 1956.]

*Decided November 6, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Frederick J. Green, Jr.,* with whom were *James J. Lindsay, J. Nicholas Shriver, Jr.,* and *J. Paul Bright, Jr.,* on the brief, for the appellants.

The Court declined to hear argument for the appellee.

*Rollins, Smalkin, Weston & Andrew* and *Ginsberg & Ginsberg* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In this appeal we must determine who in a motor vehicle caravan was careless, tested by the standards of the law.

The time was a clear, dry September morning in 1953. The place was Route 30 in Carroll County, a concrete road with a paved width of twenty-four feet, at or near the entrance to the Black and Decker Company plant south of Hampstead. Driving north on Route 30 was a tractor owned and operated by Smith, appellant, pulling a trailer owned by Branch Motor Express Company, another appellant. Just behind this rig was another tractor-trailer operated by Kramer and leased to Branch Motor Express Company. Each of the trailers was carrying a load of steel to Black and Decker and neither driver knew just where their destination was. Behind them was a Ford, and behind the Ford was a tractor-trailer owned by Associated Transport, Inc., the appellee, and operated by its employee, Pettis. As the caravan was proceeding north, the Ford, somewhat south of the Black and Decker entrance, gave the signal for a right hand turn and left the road to pull into a gasoline station. The southernmost tractor-trailer, that of Associated Transport, Inc., then pulled to the left lane of the road and started to pass the other two tractor-trailers. It passed that driven by Kramer and when Pettis, its driver, was

about even with the door of the leading tractor, Smith, its driver, pulled to the left, intending to go into the Black and Decker entrance, and struck the right rear wheel of the passing tractor, causing it to overturn. There is no testimony that Pettis, the overtaking driver, blew his horn immediately before or during the passing, and it was shown that the blinker signals on the leading trailer were not connected with its tractor and so were not in operation. The leading trailer was considerably wider than its tractor and Smith, the driver of the leading tractor, said that he waved his hand at Kramer to indicate that they had reached Black and Decker. It was stipulated that from the intersection of the middle of the entrance of Black and Decker and the west side of Route 30, a broken white center line extends south for a distance of 733 feet, 6 inches, indicating that for that distance it is proper to pass, and from the center of the entrance to the north, the road is marked with a double unbroken center line, indicating that generally one should not pass.

The appellants earnestly contended below, as they do here, that a vehicle must give an audible signal of its intention to pass a vehicle ahead and that if it attempts to pass without so doing, this constitutes negligence as a matter of law. The trial court, sitting without a jury, ruled that the statutes do not impose such a requirement on the overtaking vehicle and that failure to sound a horn when about to pass does not of itself constitute negligence as a matter of law. Judge Niles rejected, too, the further contention that if the overtaking vehicle was not negligent as a matter of law, it was as a matter of fact, holding that Smith, the leading driver, had been clearly negligent, but that negligence had not been proven against Pettis, the overtaking driver. Appellants urge us to find that Pettis was negligent as a matter of law in failing to sound his horn, and that even if this be not so, he was negligent as a matter of fact and that Judge Niles' findings were clearly wrong and so, under General Rules of Practice and Procedure, Law Rules, Part III, Rule 9 (c), the judgment entered for the appellee below should be reversed.

Prior to 1943, Code, 1924 Ed., Art. 56, Sec. 209, and Code, 1939 Ed., Art. 56, Sec. 235, read in the relevant part as fol-

lows: "* * * any vehicle overtaking another going in the same direction shall pass to the left of the vehicle so overtaken, provided the way ahead is clear of approaching traffic and the operator signals the vehicle intended to be passed by the use of his horn or other signalling device * * *." This Court, in *Greer Transportation Co. v. Knight,* 157 Md. 528, and *Meese v. Goodman,* 167 Md. 658, held that the statute meant what it said and required the sounding of a horn by the overtaking ·vehicle in every instance. In 1943, the Legislature repealed the whole of Art. 56 and enacted what is now Code, 1951, Art. 66½. Pertinent sections of Art. 66½ are as follows:

> Sec. 257 (a). "Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet * * *. The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn * * *."
>
> Sec. 184. "The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations, exceptions, and special rules hereinafter stated:
>
> "(a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
>
> "(b) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."
>
> Sec. 186 (a). "No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same

direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken."

Sec. 182 (a) (Code, 1956 Supp.). "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

"(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement; * * *."

Sec. 193 (a). "No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then giving an appropriate signal in the manner thereinafter provided in the event any other vehicle may be affected by such movement.

(b). "An adequate signal of intention to turn right or left shall be given during not less than the last 100 feet traveled by the vehicle before turning."

Secs. 194 and 195 provide for the method of giving mechanical or hand signals, to indicate the maneuver to follow.

We take the view that the statutes do not require that an overtaking vehicle must in every instance give an audible signal before passing a vehicle ahead. We take Sec. 184 (b), read with the provisions of Sec. 257 (a), to mean what Judge Niles found it to mean, namely, that the law does not say that "before you pass a person going in the same direction you have to blow your horn", but rather, "that all Sec. 184 (b) means is that if an audible signal is given, the leading car must pull over to the right and let the following car go by." We think it very significant that the present statutes require the sounding of a horn only "when reasonably necessary to insure safe operation." The earlier statutes read literally, and this literal meaning was interpreted by this Court, as we have noted, to be the true meaning, required the sounding of a

horn whenever an overtaking vehicle was about to pass one ahead. We must assume that the Legislature, by omitting the mandatory requirement of an audible signal in every case, did so to deliberately differentiate the present statute from the earlier one.

If there is no oncoming traffic and the driver ahead is honoring his statutory obligation to remain in the right lane of the road and has given no signal or other indication of an intention to turn or to pull into the left lane, the overtaking driver is not required as a matter of law to foresee that the driver ahead will violate his absolute obligation not to invade the left hand lane before giving a signal. What will make it reasonably necessary under the circumstances that a horn be sounded must depend upon the facts of each case. A vehicle ahead may give indication that it is about to disregard its statutory duties, or it may be too far to the left or seem to be indecisive as to what it is going to do, so that there are many instances when it would be not only appropriate but legally necessary for a vehicle about to pass to sound a horn. Generally, whether or not the failure of an overtaking vehicle to have given an audible signal amounts to negligence under the circumstances, is for the trier of the facts to determine. Although there are several early cases that hold to the contrary, there are a number of cases that we regard as well reasoned and sound, that, under statutes either identical to those of Maryland or without substantial or significant differences, have held that it is not necessary in every case for an overtaking vehicle to give an audible signal of intention to pass and that whether or not a signal should have been given in a specific case is ordinarily a question for the jury. See *Perrine v. Hokser* (Neb.), 62 N. W. 2d 677, 680; *Penteluk v. Stark* (Minn.), 69 N. W. 2d 899; *Dziewczynski v. Lodermeier* (Minn.), 259 N. W. 65; and *Martin v. Globe Indemnity Co.* (La. App.), 64 So. 2d 257, 259, which cites with approval the statement of *Cantrell v. H. G. Hill Stores* (La. App.), 193 So. 389, 392, that the purpose of the statute is not "* * * 'to require that the horn of every vehicle be sounded whenever its driver intends to pass a vehicle which is already sufficiently far to the right. It is quite plain that the

purpose of the \* \* \* provision was to give to the overtaking vehicle the right to require the vehicle ahead to swerve to the right in order to afford a path in which the overtaking vehicle might pass.' " See also *McLaughlin v. Curry* (Mich.), 218 N. W. 698.

The appellants do not seriously question Judge Niles' finding that Smith, the driver of the leading tractor, was negligent. We feel that their claim of clear error in the finding below that Pettis was not contributorily negligent, must fail. The relative positions of the two tractor-trailers at the time of the accident, the fact that the signal given by Smith, if his testimony be taken at full value, in all likelihood could not have been seen by Pettis until too late to be effective, coupled with the fact that it was a mere wave of the hand and not the left turn signal required by the statute and so, if seen, might even have been taken as an invitation to pass, afforded ample factual basis for the result that the trier of the facts reached. The two tractor-trailers ahead of the overtaking rig were well to the right of center of the road and gave no sign of intending to turn. The passing began and would have been finished where the broken white line indicated it was safe to pass. We think appellants' argument that because the two vehicles ahead of Pettis were going slowly near the Black and Decker entrance, he was negligent for not assuming that they were going to turn into that entrance, to be one that the trier of the facts was free to find unconvincing. It is our view that whether or not Pettis was contributorily negligent was to be determined as a matter of fact, and that Judge Niles was not clearly erroneous in the finding he made.

*Judgment affirmed, with costs.*