## JACKSON *v.* UNITED STATES. (2)

---

CRIMINAL LAW; MURDER; INSTRUCTIONS; SELF-DEFENSE; REDUCTION OF CRIME; SUFFICIENCY OF PROVOCATION.

1. A request in a prosecution for murder, from which as framed the jury may well conclude that if they cannot find him guilty of mur-

---

NOTE.—On the general doctrine of self-defense when set up by accused, who began the conflict, see note in 45 L.R.A. 687.

For authorities passing on the question of heat of passion which will mitigate or reduce the degree of a homicide, see note in 5 L.R.A.(N.S.) 809.

der they must acquit him, is properly refused; since without modification it may mislead the jury.

2. It is not the duty of the trial court to recast a request for instruction. (Citing *Capital Traction Co.* v. *Copland,* 47 App. D. C. 152 and *Robinson* v. *Parker,* 11 App. D. C. 132.)

3. To predicate error on the refusal of the trial court to grant a requested instruction, the request must be correct in point of law and applicable to the facts of the case. (Citing *Capital Traction Co.* v. *Copland, supra.*)

4. A requested instruction of self-defense, stating that if the defendant at the time he shot the deceased was under reasonable belief of imminent danger, the jury should find him not guilty of murder, is defective for failure to state what the defendant was in imminent danger of; since one cannot avail himself of the principle of self-defense unless he is able to show that he was in imminent peril of his life or of great bodily harm at the time he did the act resulting in the homicide. (Citing *Hopkins* v. *United States,* 4 App. D. C. 430.)

5. The mere belief of one who kills another that he was at the time in imminent danger of death or great bodily harm will not reduce the offense from murder to manslaughter, but to accomplish that result, his belief must be an honest or bona fide one. (Citing *United States* v. *Heath,* 9 Mackey, 272.)

6. A request to charge that if the jury believe that the defendant shot the deceased while under the influence of passion caused by the menacing acts of the deceased, their verdict should be manslaughter, which request in effect assumes that the deceased was guilty of menacing acts, is properly refused, where there is evidence to the effect that the deceased was not guilty of such acts.

7. The fact that a person commits homicide under the influence of passion is not enough to reduce his crime to the grade of manslaughter, but he must show in addition that there was a sufficient cause or provocation for his passion. (Distinguishing *Grant* v. *United States,* 28 App. D. C. 169.)

8. The adequacy of the provocation for the passion of the defendant, under the influence of which he killed the deceased, to reduce his crime to manslaughter, is a question for the jury.

No. 3187.   Submitted December 2, 1918.   Decided January 6, 1919.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia, on verdict, in a criminal prosecution for murder.                    *Affirmed.*

Vol. XLVIII.—18.

The COURT in the opinion stated the facts as follows:

George Jackson, the appellant, was convicted of murder in the second degree and sentenced to twenty-five years in the penitentiary.

According to his own testimony he saw the man Brooks, whom he killed, about 1 o'clock in the morning, standing on a bridge in this city, talking to one Marie Turner. He approached and spoke to the woman. Brooks resented the interference, and made a movement as if to strike the defendant, but the latter hit him first and knocked him down. This he did with his open hand. Brooks threatened revenge and started away with the woman, the defendant going in an opposite direction. Some time after that Brooks, carrying a stick, overtook the defendant, and, following some exchange of words, struck him with it. The blow was a light one. The defendant backed away, but Brooks followed. Brooks attempted to strike the defendant a second time, when the latter pulled a revolver and shot him dead. Defendant admits that his victim "was a little fellow;" that he, the defendant, "could handle him very easily;" that at the first encounter he "smacked him with his open hand, would not hit him with his fist, because he did not want to hurt him," and that he "could take his hand and get the best of him."

One Delaney, who conducted a crab and oyster stand near the place of the tragedy, and who was a disinterested witness, said that when he first discovered Brooks he was walking towards Jackson, with his hands "hanging down by the side of him;" that Jackson was backing away from him; that he did not "see Brooks make any motion with his hands as he followed him [Jackson] up;" that "he never saw Brooks with a stick;" and that "Jackson was about 16 feet from Brooks" when he pulled a revolver and fired the fatal shot.

There was testimony to the effect that defendant had purchased a revolver some days before, declaring that he was "going to shoot a black so-and-so." Defendant admits this, but asserts that the person to whom he referred was not Brooks. The

defendant pleaded self-defense, and asserts that the court below
erred in refusing three requests for instructions made by him.

Mr. *Pyad Bryan Morehouse*, Mr. *Selig C. Brez*, and Mr.
*Lawrence Koenigsberger* for the appellant.

Mr. *John E. Laskey*, United States Attorney, for the appellee.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

The first request said that if the jury believed "that the
defendant began the quarrel with the deceased, with no felonious intent or premeditated purpose of doing bodily harm or
killing, and under reasonable belief of imminent danger inflicted the wound upon Brooks, of which he died, then defendant is not guilty of murder." In this request there are
several vices. We note only a few: It does not state that if
the jury believed the defendant not guilty of murder it might
find him guilty of a lesser crime. From the request as framed
the jury might well have concluded that if they could not find
him guilty of murder they must acquit him. Without modification it might have misled the jury, and it was no part of the
court's duty to recast it. *Capital Traction Co.* v. *Copland*, 47
App. D. C. 152, 161; *Catts* v. *Phalen*, 2 How. 376, 11 L. ed.
306; *Haffin* v. *Mason*, 15 Wall. 674, 21 L. ed. 197; *Rosenbaum* v. *Weeden*, 18 Gratt. 785, 799, 98 Am. Dec. 737; *Robinson* v. *Parker*, 11 App. D. C. 132. To predicate error on the
refusal of the court to grant a requested instruction, the request must be correct in point of law and applicable to the
facts of the case. *Capital Traction Co.* v. *Copland, supra*, and
cases cited therein.

The request is defective in another respect: It says that if
the defendant at the time he shot was under "reasonable belief of imminent danger," the jury should find him not guilty
of murder; but imminent danger of what,—of being knocked
down, or of being humiliated in the eyes of anyone who might

be looking on, or of death, or of great bodily injury? The request does not say. To give it as drawn would have been very confusing indeed. One cannot avail himself of the principle of self-defense unless he is able to show that he was in imminent "peril of his life or of great bodily harm" at the time he did the act resulting in the homicide. *Hopkins* v. *United States,* 4 App. D. C. 430, 443; Wharton, Homicide, 230; 2 Wharton, Crim. Law, 7th ed. secs. 1020–1022; *People* v. *McLeod,* 1 Hill, 377.

By the second request the court was asked to charge the jury that if they believed "from the evidence that the defendant shot the deceased because he believed at the time that he was in danger of death or serious bodily harm from the deceased, and had no reasonable cause for such belief, then your [their] verdict should be guilty of manslaughter." The appellant argues that the law provides two kinds of self-defense,—one perfect and the other imperfect; that when the first is applicable the defendant must be acquitted, but in case of the second he should be found guilty of manslaughter; that the first requires that the accused have had "reasonable cause for believing himself in imminent danger of death or great bodily harm," while in the second it is enough if he believed that he was in such danger. In support of his contention he cites *Allison* v. *State,* 74 Ark. 444, 86 S. W. 409; *United States* v. *King,* 34 Fed. 302; *United States* v. *Heath,* 9 Mackey, 272; Wharton, Crim. Law, 11th ed. secs. 622–624. But, as we view these authorities, none of them supports the request as he presented it. The *Allison Case* requires that the belief should be an "honest one." In the *King Case* it is said that the defendant must have a "bona fide belief," but the belief, according to the same authority, must be not only that the defendant was in imminent danger of death or great bodily harm, but also that he could save himself only "by the death of the felonious assailant." The doctrine thus announced was expressly approved in the *Heath Case,* although at first glance it may not appear to be quite in harmony with the instruction which was upheld in that case, but on closer examination it will be found

that there is no conflict between them. The comment of the court upon the instruction must be construed in view of the facts of the case in which it was made. There the defendant was convicted of manslaughter. He complained of the effect imputed to his carelessness. In other words, he was contending that if he entertained the belief at all, even though negligently, he should be acquitted. The instruction said, No; that in such a case he would be guilty at least of manslaughter. It was this doctrine that the reviewing court approved.

Appellant says that there is no difference in reason between a mere belief and "an honest" or "bona fide" one, and that therefore his request is correct although he omitted from it these qualifying words. But we cannot agree with him. An honest or bona fide belief is one which has some basis on which to rest, although the person entertaining it neglects to consider all the circumstances at hand and which ought to be taken into account by him. A person, in our opinion, cannot be said to have an honest or bona fide belief where there is nothing to support it. There is such a wanton disregard of social duty in the intentional killing of a human being (*State v. Shippey,* 10 Minn. 223, Gil. 178, 182, 88 Am. Dec. 70) that the guilty one should not be permitted to escape the punishment due to murder in some one of its degrees by showing that he merely believed, without the slightest reason therefor, that his life was in danger. Neither the courts nor the text-writers, so far as our investigations have gone, point out the distinction between a mere belief and an honest or bona fide one; but that they do not regard them as the same is clear to us, in view of the fact that whenever they discuss the subject they say that the belief which will reduce the offense to manslaughter must be an honest or bona fide one.

Finally, the defendant by his third request asked the court to charge the jury that if they believed that he "shot the deceased while under the influence, and as a result, of passion caused by the menacing acts and attitude of the deceased," their verdict should be manslaughter. This request is not clear, and might well be understood by the jury as assuming that the de-

ceased had been guilty of menacing acts.   The witness Delaney
said, as we have shown, that at the time Jackson shot Brooks
the latter had his "hands down by the side of him;" that he
did not see him "make any motions with his hands as he fol-
lowed him [Jackson] up," and that "he never saw Brooks with
a stick."   Jackson, on the other hand, testified that "Brooks
rushed at him" and "struck him with a stick."   If the jury
believed Delaney, neither Brooks's attitude nor acts were men-
acing.   It was for the jury, not the court, to say which told
the truth.

Furthermore, the fact that a person commits homicide under
the influence of passion is not enough to reduce his crime to
the grade of manslaughter.   He must show in addition that
there was a sufficient cause of provocation for his passion.   "If
there be provocation without passion, or passion without a suffi-
cient cause or provocation,   *   *   *   the killing will be mur-
der."   *M'Whirt's Case,* 3 Gratt. 594, 606, 46 Am. Dec. 196,
and cases cited.   "It matters not how violent may have been
the slayer's passion, it will not relieve him of the implication
of murder unless it was engendered by a provocation which the
law recognizes as being reasonable and adequate."   13 R. C. L.
sec. 96, p. 791; *Henning* v. *State,* 106 Ind. 386, 400, 55 Am.
Rep. 756, 6 N. E. 803, 7 N. E. 4; *State* v. *Shippey,* 10 Minn.
223, Gil. 178, 182, 88 Am. Dec. 70; *State* v. *Grugin,* 147
Mo. 39, 49, 42 L.R.A. 774, 71 Am. St. Rep. 553, 47 S. W.
1058; *McDade* v. *State,* 27 Tex. App. 641, 687, 11 Am. St.
Rep. 216, 11 S. W. 672.   And the "question, as it arises in
nearly all cases, is one of fact for the determination of the
jury."   13 R. C. L. sec. 96, p. 792; see also *Maher* v. *People,*
10 Mich. 212, 217, 81 Am. Dec. 781.   The case of *Grant* v.
*United States,* 28 App. D. C. 169, 175, decides nothing to the
contrary.   It does not approve the instruction considered there,
but says that it was all "the accused had any right to demand,"
which is quite a different thing.   Indeed, appellant admits in
his brief that the "question of adequacy of the provocation
should have been left to the jury;" and we agree with him.

But the request which he made, and which we are considering, did not do that.

The learned trial justice charged the jury very fully upon this point. Among other things he said: "Where one is actually struck by another and hot blood is engendered thereby, and in the heat of passion engendered by blows he kills another, even if he intends to kill him, it is manslaughter; * * * Is this case one where the defendant acted under the spur of passion, in hot blood engendered by blows or a blow he had received from this man? I am not speaking of the question of self-defense now, * * * but did he act in hot blood because he was angered and enraged, and smarting from the pain he had received from the blow,—not because the man was holding a club over him; that does not justify you in finding a verdict of manslaughter; * * * but that he had been struck and thereby had been enraged so that he fired in hot passion, then it is manslaughter even if he meant to kill him, and nothing but manslaughter." We think this instruction was as favorable to the defendant as the law would permit. Defendant excepted to no part of the charge given by the court, nor does he make any other complaint than those we have disposed of.

We are clearly satisfied that the record is free from error, and hence we affirm the judgment.                *Affirmed.*