**L. R. HIATT et al., Plaintiffs-Appellants,**

v.

**NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellee.**

**No. 17082.**

United States Court of Appeals
Seventh Circuit.

May 20, 1969.

**744**

George Rose, J. Evelyn Pitschke, Indianapolis, Ind., for appellants.

Karl J. Stipher, Thomas M. Lofton, Norman P. Rowe, Indianapolis, Ind., for appellee, Baker & Daniels, Indianapolis, Ind., R. O. Olson, Chicago, Ill., of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Plaintiffs, a group of railroad switchtenders, brought this diversity action [1] against the New York Central Railroad Company (NYC) to recover for loss of employment which resulted when the defendant company moved its switching operations from one situs to another. A judgment was entered on a special jury verdict for defendant. Plaintiffs appeal contending the trial court erred in refusing to give two of their requested instructions.

The relevant facts underlying this contested issue are not substantially in dispute and are best summarized in a chronological fashion.

During 1956, NYC initiated a plan to transfer its switching operations from Hill Yard, located on the southeast side of Indianapolis, Indiana, to a proposed electronically controlled yard. The new yard, called Avon Yard, was to be located on NYC's Indianapolis-St. Louis lines in an area approximately 12 miles west of Indianapolis.

Pursuant to this plan, construction of the Avon Yard was commenced in 1959. By July 13, 1960, some of defendant's switching operations were transferred from the old Hill Yard to the modern Avon Yard. With the transfer to the new switching facilities at Avon, there was no longer a need for switchtenders at the Hill Yard, and consequently, between July 19, 1960 and September 26, 1960, defendant abolished plaintiffs' positions at Hill Yard.

To attain the most direct access to the Avon Yard for its Chicago Division traffic, NYC entered into an agreement with Pennsylvania Railroad Company (PRR). This provided defendant with trackage rights over PRR's rails from Lebanon, Indiana, to a point on defendant's Indianapolis-St. Louis lines from which defendant's trains could proceed to the Avon Yard. Though the PRR trackage access was the most economical, it was not the sole possible route to Avon. There were two alternative routes to the new yard neither of which involved use of the old Hill Yard.

On June 17, 1960, NYC filed an application, as supplemented June 30, 1960, with the Interstate Commerce Commission (ICC) seeking approval of its trackage agreement with PRR. The ICC authorized the agreement on July 29, 1960 subject to the contingency that the displaced Hill Yard employees be protected in accordance with the conditions set forth in Oklahoma Ry. Co. v. Trustees Abandonment, 257 I.C.C. 177 (1944). In approving the agreement, the ICC noted that the trackage agreement between

---

1. Plaintiffs' complaint premises jurisdiction on 28 U.S.C.A. § 1336.

NYC and PRR would "result in a much more efficient movement of Central's * * * freight" and "contribute to [defendant's] annual savings of some $2,-900,000, * * *."

By brief, plaintiffs state that:

"The complaint raised one question, did the defendant's use of the Pennsylvania Railroad trackage from Lebanon to Tremont, Indiana, enable the defendant to move all of its Chicago Division traffic from the Hill Yard to the Avon Yard, thus making it possible for it to reduce operations at the Hill Yard and to dispense with the plaintiffs' services. In other words, are the discharges of the plaintiffs to be laid at the door of the trackage agreement?"

Thus, the gravamen of plaintiffs' suit against NYC rests on the theory that the trackage agreement, rather than the modernization of Avon Yard, was the paramount reason for moving the Chicago Division traffic switching operations from Hill Yard to Avon Yard and was the primary cause for the elimination of their jobs at Hill Yard.

After hearing all the evidence, the trial court submitted the case to the jury and instructed the jury accordingly:

"You are to return your verdict herein by answering certain questions contained in a form which I furnish you, as you find such answers to be from a preponderance of the evidence on such subjects:

"The first question is as follows:

" '1. Would the defendant have diverted the classification of its Chicago freight from the Hill Yard to the Big Four Yard at Avon but for its acquisition of the Pennsylvania trackage rights?' "

"Such question should be answered either 'Yes' or 'no.'

"The second question is:

" '2. If the answer to the first question is 'No,' then did the acquisition of such rights by the defendant cause the defendant to abolish the switchtenders' jobs at the Hill Yard?' "

"Such question should be answered 'Not Applicable' if the answer to the first question is 'Yes;' otherwise, it should be answered 'Yes' or 'No'."

Plaintiffs made no objection to the foregoing instructions and expressly assured the court that they had no objection to any of its instructions.

After reviewing the record in this case, we are satisfied that the court's instructions fully and fairly apprised the jury concerning the plaintiffs' theory of the case.

We further find with respect to the two tendered instructions of the plaintiffs that the court did not err in its refusal to give such instructions.

The first instruction submitted by plaintiffs reads:

"If you find from the evidence that the coordination between the New York Central Railroad and the Pennsylvania Railroad for the joint use of the Pennsylvania tracks between Lebanon and Tremont, Indiana, *along with the opening of the Avon Yard,* enabled the NYC to move all of its Chicago traffic from the Hill Yard to the Avon Yard, thus enabling the NYC to operate its Hill Yard without the services of the switchtenders, then you shall find for the plaintiffs." (Emphasis added.)

The thrust of this instruction is to hold the defendant liable if the jury found from the evidence adduced that plaintiffs were discharged as a result of *both* the opening of the modern Avon Yard *and* the NYC-PRR trackage agreement. The instruction is inconsistent with and departs from plaintiffs' admitted theory of the case, *i. e.,* that plaintiffs were discharged as a result of the trackage agreement. It follows that the instruction is misleading and defective in its failure to accord with plaintiffs' theory of recovery. The issue in

**746**

the case was whether plaintiffs were discharged as a result of the trackage agreement and not whether they were discharged due to the opening of the new yard *and* the trackage agreement. It is axiomatic that a trial court's refusal to submit an erroneous or misleading instruction is not error. Miller v. Pine Bluff Hotel Company, 8 Cir., 286 F.2d 34, 39 (1961); Cherry v. Stedman, 8 Cir., 259 F.2d 774, 777–778 (1958). See 2B Barron and Holtzoff Federal Practice and Procedure § 1102.

The second instruction submitted by plaintiffs reads:

"If you find that the Pennsylvania trackage agreement provided the New York Central with direct access to the Avon Yard, and if you find that the direct access to the Avon Yard provided by the Pennsylvania trackage agreement to and from the New York Central Chicago route, enabled the New York Central to move all of its Chicago Division traffic from the Hill Yard to the Avon Yard for classification, you may find that this Pennsylvania trackage agreement resulted in the displacement of the plaintiffs in their jobs, and you may find for the plaintiffs."

■■ We agree with defendant's analysis in determining that this instruction is erroneous and confusing. The second requested instruction invites the jury to return a verdict for plaintiffs upon the finding that the trackage agreement enabled NYC to route its Chicago Division traffic to Avon Yard and effectively precludes the jury from properly considering the evidence that the alternative, though economically less desirable, routes to Avon Yard existed and that the utilization of the new yard was not necessarily contingent upon NYC's use of PRR's rails. It was not error to refuse this instruction as "the trial court is under no obligation to give faulty instructions." Washington State Bowling Proprietors Ass'n v. Pacific Lanes, Inc., 9 Cir., 356 F.2d 371, 376 (1966), cert. denied, 384 U.S. 963, 86 S.Ct. 1590, 16 L.Ed.2d 674.

After reviewing the record and considering the instructions, it is abundantly clear to us that the trial court fairly and fully charged the jury with respect to plaintiffs' theory of the case. It is further evident that plaintiffs' tendered instructions were improper and that the trial court did not err in refusing them.

For the foregoing reasons, the judgment of the district court is affirmed.

Affirmed.