242 N.J. Super. 346 (1990)
576 A.2d 934
FRANK SMITH, PLAINTIFF-APPELLANT,
v.
KRIS-BAL REALTY, INC., DEFENDANT-RESPONDENT, AND MICHAEL BALSAMO, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1990.
Decided July 10, 1990.
*347 Before Judges KING, SHEBELL and BAIME.
Richard B. Ansell argued the cause for appellant (Ansell, Fox, Zaro, McGovern & Bennett, attorneys; James M. McGovern, Jr., of counsel; Jane M. Ryan, on the brief).
Elliott Abrutyn argued the cause for respondent Kris-Bal Realty, Inc. (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Elliott Abrutyn, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This case involves the use of a safety code, specifically regulations under the federal Occupational Safety and Health Act, as part of the basis for an expert's opinion on the duty of *348 care owed to plaintiff, a business invitee. We conclude that the OSHA code, when used in connection with expert testimony, may be relied upon to illustrate industry standards and to provide support for the opinion of an expert on the proper standard of care under McComish v. DeSoi, 42 N.J. 274, 200 A.2d 116 (1964), even though plaintiff was a business guest at the marina, not a worker.
Plaintiff appeals following a defendant's verdict in a personal injury action. He sued the owner of a marina, Kris-Bal Realty Co. in Belmar, where he fell while getting off a vessel. The vessel was a 75-foot fishing trawler owned by Robert Soleau, plaintiff's business associate. Soleau's vessel regularly docked at the marina. He routinely sold fish to the marina's owner. While visiting Soleau, his friend and business associate, on board Soleau's fishing trawler, plaintiff was a business invitee, to whom the marina owner owed a duty of ordinary care. Brown v. Racquet Club of Bricktown, 95 N.J. 280, 290, 471 A.2d 25 (1984). To our knowledge, plaintiff never sued the vessel or its owner.
The vessel was moored about three or four feet from the dock at the time of the accident. Plaintiff claimed that his fall and injuries occurred because the owner of the marina had failed to provide any ladders or gangways to assist him in getting on and off the vessel safely.
Plaintiff presented the testimony of his expert, Dr. McNeill, a marine and mechanical engineer, on the duty of due care owed by the marina owner. McNeill's general thesis was that the marina owner had a duty to provide a gangway or other means of safe access to and from the vessel plaintiff was visiting, or at least to provide appropriate warnings instructing people not to jump from dock to boat or vice versa in the absence of such devices. McNeill estimated that without a suitable gangway, the actual distance from the boat to the dock at the time of accident would have been about four feet, three inches. This, he felt, was "a tremendous distance to try to step or jump *349 over." According to McNeill, an effective gangway would have cost the marina owner about $200 to build.
McNeill placed the duty to provide a gangway or other safe access squarely on the owner of the marina, in the circumstance. For this conclusion he relied in part on the "standards of the Occupational Safety and Health Act" of 1970. 29 U.S.C.A. §§ 651 to 678. He testified that OSHA standards "are promulgated for safety, for the safety of the employees, the employers and those that are using the terminals.... Those that are invited upon the particular area." He also testified that OSHA standards "are industry-wide standards." The defendant, to the contrary, claimed that the owner of the vessel had the sole duty to provide a gangway or ladder.
The judge removed from the jury's consideration any reliance which McNeill placed on OSHA standards. In response to a motion to strike at the end of plaintiff's case, the judge ruled that OSHA regulations "are not applicable in this case." In his final instruction to the jury the judge stated:
You will recall that Doctor McNeill testified that in his opinion the dock in question was a marine terminal, and that based upon his experience and knowledge, it is the responsibility of the dock owner to provide the means for people to go on and off the boats docked there.
You may recall that Doctor McNeill also testified that OSHA or the Occupational Safety and Health Act required this.
I am specifically instructing you to disregard that portion of his testimony, since I have ruled that the OSHA regulations are not applicable in this case.
On this appeal plaintiff claims that the judge erred in removing any consideration of McNeill's testimony about OSHA standards from the jury. We agree with plaintiff's contention, to an extent, and we reverse and remand for a new trial. We do not agree with defendant Kris-Bal's contention that OSHA standards had absolutely no pertinence simply because plaintiff's accidental injuries did not occur in an employment or work-place context.
McNeill should have been permitted to allude to OSHA standards as part of his reasoning process that defendant's marina operation violated industry standards of due care. McNeill *350 acknowledged on cross-examination that the OSHA regulations specifically applied in the employment context and implemented the safety concerns Congress addressed by that Act and by the Longshoreman and Harbor Workers' Compensation Act. 33 U.S.C.A. §§ 901 to 950; 29 C.F.R. § 1918.1(a). Indeed the OSHA regulations contain a specific expression of a legislative intent to impose a legal duty upon employers only:
§ 1918.2 Scope and responsibility.
(a) The responsibility for compliance with the regulations of this part is placed upon "employers" as defined in § 1983.3(c).
(b) It is not the intent of the regulations of this part to place additional responsibilities or duties on owners, operators, agents or masters of vessels unless such persons are acting as employers, nor is it the intent of these regulations to relieve such owners, operators, agents or masters of vessels from responsibilities or duties now placed upon them by law, regulation or custom. [29 C.F.R. § 1918.2.]
Nonetheless, we conclude that the trial judge erred when he told the jury to completely "disregard" any reference by plaintiff's expert to the OSHA standard requiring the owner of the facility to provide a gangway or other means of access to the fishing vessel docked in the marina. Dr. McNeill based his opinion on the industry standard of care, in part, on the OSHA standard. He also alluded to the International Labor Organization's Standards for maintenance of docks as well as his "own experience at the [New York] Maritime College" and in the industry.
In McComish v. DeSoi, 42 N.J. 274, 200 A.2d 116 (1964), our Supreme Court held that industry standards in the form of safety codes or manuals can be referred to by experts as the basis for their opinions on a reasonable standard of care or on prevailing safety practices. In McComish, the plaintiff's expert referred to trial manuals on prevailing safety practices in the construction and use of an "A" sling, which is used to move heavy objects at a work site. Among these manuals were those issued by American Tiger Wire Rope, the U.S. Army Corps of Engineers, the U.S. Navy, the U.S. Air Force, and the U.S. Army.
*351 The Supreme Court approved the experts' use of these types of industry safety standards in formulating his opinion on the appropriate standard of care in the construction and assembly of an "A" sling. The Court stated:
[The trade manuals] were introduced as safety codes, as objective standards of safe construction, generally recognized and accepted as such in the type of construction industry involved. A treatise is usually no more than one expert's opinion regarding a particular factual complex. On the other hand, a safety code ordinarily represents a consensus of opinion carrying the approval of a significant segment of an industry. Such a code is not introduced as substantive law, as proof of regulations or absolute standards having the force of law or of scientific truth. It is offered in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, and as such it provides support for the opinion of the expert concerning the proper standard of care. [42 N.J. at 282, 200 A.2d 116.]
The Court explained the precise use of the safety codes or standards in this way:
The basic test as to the responsibility of Beloit here is whether reasonable care was exercised in the construction and assembly of the A sling. That is the standard to be used and departure or deviation therefrom is negligence. In applying the standard reasonable men recognize that what is usually done may be evidence of what ought to be done. And so the law permits the methods, practices or rules experienced men generally accept and follow to be shown as an aid to the jury in comparing the conduct of the alleged tortfeasor with the required norm of reasonable prudence. It is not suggested that the safety practices are of themselves the absolute measure of due care. They are simply evidence of "how to" assemble the sling as commonly practiced by those who have experience in doing it. It is important that their limited function and probative force as evidence be appreciated. What ought to be done is fixed by the standard of reasonable prudence, and in law that requirement remains the same whether it is usually complied with or not. Thus, what is usually done in a particular industry cannot be regarded as what ought to be done unless the conduct and the test are in harmony. [Id. at 282-283, 200 A.2d 116.]
Thus, safety codes may be "admitted after proper identification by a qualified witness for the purpose alluded to above, i.e., as some evidence of the proper standard of care but not as absolute evidence of such standard." Id. at 283, 200 A.2d 116. The Supreme Court concluded:
Our analysis of the arguments for and against the evidentiary competency of safety codes or manuals such as those involved here has led us to conclude that they were pertinent and valuable aids in the resolution of the issue of negligence of the defendants. Although the precedents are in conflict, in our judgment the exclusionary view is unrealistic. [Id. at 286, 200 A.2d 116.]
*352 In Sanna v. National Sponge, 209 N.J. Super. 60, 69, 506 A.2d 1258 (App.Div. 1986), an industrial accident case, we commented on the progeny of McComish v. DeSoi, specifically in relation to OSHA standards:
In conclusion, and because the case must be retried, we observe that federal Occupational Safety and Health Administration Standards may have been relevant and perhaps violated in this situation. These standards, contained in 29 C.F.R. § 1926, have been adopted in this state. See N.J.A.C. 12:100-5.2(a). There are very specific standards of "Ladders and Scaffolding," see 29 C.F.R. § 1926.450, 451. Even if not specifically applicable in the regulatory context of this accident, [footnote omitted] a question which is not before us and which we do not decide today, the standards expressed in the OSHA regulations may be recognized and accepted as objective safety standards and practices generally prevailing in the community if appropriate expert or other testimony so develops. McComish v. DeSoi, 42 N.J. 274, 281 [200 A.2d 116] (1964); see Cepeda v. Cumberland Engineering Company, 76 N.J. 152, 193 [386 A.2d 816] (1978); Black v. Public Service Elec. & Gas Co., 5C N.J. 63, 77 [265 A.2d 129] (1970); Coleman v. Steinberg, 54 N.J. 58, 65 [253 A.2d 167] (1969). [Ibid.]
See also Keir v. United States, 853 F.2d 398, 413-414 (6th Cir.1988) (applying Sanna and New Jersey law); Meder v. Resorts International Hotel, Inc., 240 N.J. Super. 470, 477, 573 A.2d 922, 926 (App.Div. 1989). See also Restatement, Torts 2d, § 288B, comment d. at 38 (1965); Prosser and Keeton, Law of Torts, § 36 at 231 (5th ed. 1984).
While plaintiff here enjoyed the status of a business invitee of both the marina and the owner of the fishing trawler at the time of his accident, and was not an employee laboring at his workplace, safety standards targeted specifically for the protection of workers getting on and off vessels were not totally irrelevant to the reasonable standard of care owed to him. At the time of injury, plaintiff was getting off the vessel. He was doing the same kind of activity sometimes done by those workers in the protected class. True, the OSHA standard of care did not apply substantively to plaintiff in the sense that a violation would be per se negligence. See Meder v. Resorts International, 240 N.J. Super. at 477, 573 A.2d 922, a work-place accident case, in which we held that a "violation of obligations imposed by the federal regulations [OSHA] supports a tort claim under State law." Nevertheless, plaintiff's *353 expert could, under the doctrine of McComish v. DeSoi, properly rely on OSHA standards in explaining his conclusions on the duty of care. See Kraus v. Alamo National Bank of San Antonio, 586 S.W.2d 202 (Tex.Civ.App. 1979) (violation of OSHA regulations relevant to standard of care where innocent bystander is hurt).
We conclude that the judge erred in striking all references by plaintiff's expert to the OSHA standards and in telling the jury to "disregard" any such allusion to them. The OSHA safety code testimony was offered "in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, and as such it provides support for the opinion of the expert concerning the proper standard of care." McComish v. DeSoi, 42 N.J. at 282, 200 A.2d 116.
The weight to be given the expert's testimony was for the jury. The expert was cross-examined vigorously on the reasons for his opinion. Contrary expert testimony was produced. The jury can be instructed that the OSHA standards may be greater than what would be considered reasonable in the industry for a person on the premises other than workers, such as commercial invitees. See McKinnon v. Skil Corporation, 638 F.2d 270 (1st Cir.1981). But under our precedent, the expert may rely on recognized safety standards in the industry and explain that reliance to the jury when giving an opinion on the standard of care.
Reversed for a new trial.