Ann E. THOMA, et ux., Appellants,

v.

KETTLER BROTHERS, INC.,
et al., Appellees.

No. 92–CV–225.

District of Columbia Court of Appeals.

Argued June 4, 1993.

Decided Oct. 18, 1993.

J. Gordon Forester, Jr., Washington, DC, for appellants.

Timothy E. Fizer, Lutherville, MD, for appellees.

Before FERREN, FARRELL, and SULLIVAN, Associate Judges.

FARRELL, Associate Judge:

A jury returned a verdict for the defen-dants (appellees) in this personal injury case arising from a construction site accident. On appeal, appellants' primary argument is that the trial judge erred in refusing to admit in evidence a relevant Occupational Safety and Health Act (OSHA)[1] regulation and to instruct the jury that it was evidence the jury could consider in deciding the precise duty of care appellees owed to business-invitees on the construction site (assuming it found appellants to be invitees). We hold that, upon

proper request, a plaintiff is entitled to an instruction on the evidentiary significance of a standard such as the OSHA regulation. For the reasons stated in part IV. of this opinion and in the concurring opinion of Judge Sullivan, however, the failure to give that instruction provides no basis for reversal of the judgment in this case.

## I.

Appellants Ann and Robert Thoma contracted with appellee Kettler Brothers, Inc., the general contractor and direct sales agent, to purchase a newly-constructed townhouse in Washington, D.C. The developer was appellee Miller and Smith Companies of Georgetown, Inc. Mrs. Thoma visited the home several times during its construction, both before and after signing the contract. For instance, on January 5, 1989, she inspected the interior of the building with a view to selecting fixtures and colors for the home. On February 23, 1989, while the house was still under construction, Mrs. Thoma went to the Kettler sales office and told the agent, Jo Hanlon, that she and her friends would be visiting the house early that evening. According to Mrs. Thoma, Mrs. Hanlon stated that there would be "no problem" and gave Mrs. Thoma her home telephone number in the event security prevented her from entering the home.[2] Mrs. Thoma visited the home with her friends at approximately 5:00 p.m., still during daylight. As she was descending the interior stairs, she slipped and fell. She testified that her fall was caused by loose plastic, debris, and plaster dust which covered the stairs. She suffered an avulsion fracture of the left ankle and a displaced fracture of the right ankle, requiring surgery and the permanent fixation of a metal plate.

Mrs. Thoma sued for damages for her injuries; Mr. Thoma sued for loss of consortium. They filed a motion *in limine* on February 8, 1991, as supplemented by an August 8, 1991 memorandum, requesting a jury instruction that appellees' violation of an

1. Act of 1970, 29 U.S.C. §§ 651–678 (1978).

2. Mrs. Hanlon testified that she had not given Mrs. Thoma permission to visit the construction site. Part of appellees' defense was that Mrs. Thoma was, in legal effect, a trespasser on the site.

OSHA regulation set forth at 29 C.F.R. § 1926.501(d) & (e) (1990) was *per se* negligence. They also filed a February 3, 1992, Memorandum of Law requesting an instruction that violation of the OSHA regulation could at least be considered by the jury as evidence of negligence. The trial judge denied both requested instructions, and as a result the jury heard no evidence of the regulation. The judge rejected the proposed *per se* negligence instruction on the ground that the OSHA regulations are intended to protect employees on the worksite, not members of the general public. Although the judge was disposed to let the jury consider the regulation as evidence, he ultimately declined to do so and rejected the second requested instruction because the pertinent regulation, though operative at the time of the accident, had been superseded at the time of trial; and, in any case, he viewed the regulations as applying only to temporary structures on the construction site, not stairways intended to be part of the finished home.

## II.

■ Appellants first contend the trial judge erred in not instructing the jury that appellees' violation of the OSHA regulations would constitute negligence *per se*.[3] The regulation in effect at the time of the acci-

dent, 29 C.F.R. § 1926.501, reads in relevant part as follows:

\*  \*  \*  \*  \*  \*

(d) Debris, and other loose materials, shall not be allowed on or under stairways.

(e) Slippery conditions on stairways shall be eliminated as soon as possible after they occur.[4]

■ For the violation of a statute or regulation to constitute negligence *per se*, the regulation must be enacted "to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff [must be able to] establish his relationship to the statute...." *Ceco Corp. v. Coleman, supra* note 3, 441 A.2d at 945; *see also* RESTATEMENT (SECOND) OF TORTS, § 286, at 25 (1965). "The party relying upon the statutory standard must, at the outset, establish its applicability by showing that he is within the class of persons intended to be protected by it, and that the injury incurred resulted from the type of risk against which the statute was designed to protect." *Lewis v. Washington Metro. Area Transit Auth., supra* note 3, 463 A.2d at 674.

■ Appellants' claim that they come within the class of persons intended to be protected by the OSHA regulations, and thus were entitled to a *per se* negligence instruction, is foreclosed by *Kurtz v. Capital Wall Paper Co.*, 61 A.2d 470 (D.C.1948).[5] In

---

3. We reject at the outset appellees' argument that appellants failed to preserve either claim of refusal to instruct the jury by not objecting to the omission before the jury retired, as required by Super.Ct.Civ.R. 51. The trial judge had no fewer than four opportunities to consider appellees' proposed instructions, and he repeatedly made clear his grounds for rejecting them. Thus, appellants' objection was " 'called to the attention of the trial court in such manner as to clearly advise it as to the question of law involved....' " *Ceco Corp. v. Coleman*, 441 A.2d 940, 947 (D.C. 1982) (citation omitted). "The failure to object may be disregarded if the party's position has previously been clearly made to the court and it is plain that a further objection would be unavailing." 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2553, at 639–40 (1971) (commenting on Rule 51 of the Federal Rules of Civil Procedure, which is identical to Super.Ct.Civ.R. 51); *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank*, 738 F.2d 163, 167 (6th Cir.1984). Cf. *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 672–73 n. 14

(D.C.1983) ("unduly harsh to penalize appellants" under Rule 51 "for their imperfectly timed request," where trial judge had adequate opportunity to consider and act upon the request).

4. Prior to trial, these regulations had been replaced because they were "redundant or ambiguous or are not clearly applied to all situations," 55 Fed.Reg. 47661 (1990). The regulation in effect at the time of trial provided that "slippery conditions on stairways shall be eliminated before stairways can be used to reach other levels." 29 C.F.R. § 1926.1052(a)(7) (1991).

5. *Kurtz* was a decision of this court, which was then named the Municipal Court of Appeals for the District of Columbia. *Kurtz* is therefore binding on a division of this court unless overruled en banc or unless it is inconsistent with (hence was effectively overruled by) a subsequent decision of the United States Court of Appeals for the District of Columbia Circuit issued before February 1, 1971. *M.A.P. v. Ryan*, 285 A.2d 310, 311–12 (D.C.1971). *See also* note 9, *infra*.

*Kurtz*, a customer of a wallpaper supply company was injured while using a wallpaper trimming machine made available 'for customer use on the company premises. He sued and attempted to introduce as evidence a safety regulation promulgated by the Minimum Wage and Industrial Safety Board which arguably had been violated by the company in maintaining the machine. The trial judge excluded the evidence, and the court of appeals sustained the exclusion. Pointing out that throughout the statute which authorized the regulation "there are references to 'employers,' 'employees' and 'places of employment,' but nowhere is there any mention of a duty toward members of the general public," the court found "no indication whatever that [the statute] was intended to protect any one other than employees or wage earners." *Id.* at 471. It therefore held that "the trial judge was correct in declining to let the jury consider the tendered regulation as a basis of additional support for plaintiff's claim." *Id.*

■ With respect to the intended class of protected individuals, the OSHA regulations cannot be distinguished meaningfully from the safety regulation at issue in *Kurtz*. Both govern the workplace relationship of employer and employee. *See, e.g.,* 29 U.S.C. § 654(a) (1985) (under OSHA, "[e]ach em-

ployer ... shall furnish to each of his employees employment and a place of employment which are free from recognized hazards ... [and] shall comply with occupational safety and health standards promulgated under this chapter").[6] Therefore, appellants' effort to extend the scope of OSHA's coverage to themselves as business invitees of Kettler Brothers founders on *Kurtz*'s refusal even to permit introduction in evidence of an analogous safety regulation in a suit brought by a customer. Even without the binding authority of *Kurtz*, moreover, we would decline to hold that violation of an OSHA regulation is negligence *per se* as applied to injured persons who in no sense are party to the employer-employee relationship to which the regulations relate. *E.g., Smith v. Kris-Bal Realty, Inc.,* 242 N.J.Super. 346, 576 A.2d 934, 938 (1990) (business-invitee); *Wood v. Smith,* 343 Pa.Super. 547, 495 A.2d 601, 603 (1985) (homeowner).[7] *See also* W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS (PROSSER) § 36, at 222 (5th ed. 1984) (in determining the class of persons to whom a statutory violation pertains, courts "have been careful not to exceed the purpose which they attribute to the legislature"). *Cf. District of Columbia v. Brown,* 589 A.2d 384, 387 (D.C.1991) (D.C. elevator code not meant to protect members of general public from their own negligence).[8]

**6.** *See also* 29 U.S.C. § 653(b)(4) ("Nothing in this Act ... shall be construed to supersede or in any manner ... enlarge or diminish or affect in any other manner the common law or statutory rights, or liabilities *of employers ... arising out of, or in the course of, employment*" (emphasis added); 29 C.F.R. § 1910.5(d) ("Applicability of Standards") ("In the event a standard protects on its face a class of persons larger than employees, the standard shall be applicable under this part only to employees and their employment and places of employment"); *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1261 (4th Cir.1974) ("predicate" for application of OSHA is an employment relationship).

**7.** This case, therefore, does not require us to enter the "complex dispute" among the federal and state courts, *Rabar v. E.I. DuPont de Nemours & Co.,* 415 A.2d 499, 503 (Del.Super.1980), as to whether OSHA regulations apply to persons not directly employed by the alleged violator, such as subcontractors and their employees, *Beatty Equip. Leasing v. Secretary of Labor,* 577 F.2d 534 (9th Cir.1978); *Arrington v. Arrington Bros. Constr.,* 116 Idaho 887, 781 P.2d 224

(1989), or employees of independent contractors working on the construction site, *Teal v. E.I. DuPont de Nemours, Inc.,* 728 F.2d 799 (6th Cir.1984), or, indeed, potential employees entering onto the job site to inquire about future employment. *Jeffries v. Potomac Dev. Corp.,* 261 U.S.App.D.C. 355, 822 F.2d 87 (1987).

In *Martin v. George Hyman Constr. Co.,* 395 A.2d 63, 71 n. 9 (D.C.1978), we purported to leave open the question "whether and, if so, under what circumstances, a person other than a wage earner might be an intended beneficiary of [District of Columbia workplace] safety regulations, compare *Kurtz,* [*supra*], with *Bowman v. Redding & Co.,* 145 U.S.App.D.C. [294], 302, 449 F.2d [956], 964 [(1971)]." As we recognized elsewhere in the opinion, however, *Martin,* 395 A.2d at 68, the *Bowman* decision is not binding on us under *M.A.P. v. Ryan, supra* note 5, whereas *Kurtz* is.

**8.** Still another reason why a negligence *per se* instruction would have been improper is the generality of the regulations at issue here, which do not differ significantly in their particulars from

### III.

■ Appellants' primary contention, however, is that the trial judge erred in refusing to permit the jury to consider the OSHA regulations even as evidence of the standard of care to be followed by contractors such as appellees in maintaining the construction site. *Kurtz,* viewed in isolation, forecloses this argument as well: it sustained the refusal of the trial judge "to let the jury consider the tendered regulation *as a basis of additional support* for plaintiff's claim." 61 A.2d at 471 (emphasis added). But, as we have stated in another context, *Kurtz* would bind us on this point only "[i]f the law had stood still since" that decision. *Elam v. Monarch Life Ins. Co.,* 598 A.2d 1167, 1170 (D.C.1991). Significantly, decisions of the United States Court of Appeals for the District of Columbia Circuit rendered after *Kurtz,* but binding upon this court, *M.A.P. v. Ryan, supra* note 5, establish the very different rule that even though a statute or regulation "is not directly applicable as a protection to the particular plaintiff," it nonetheless may constitute "evidence of a standard which the jury [can] consider in determining whether the defendants … exercised due care according to their respective responsibilities." *Curtis v. District of Columbia,* 124 U.S.App.D.C. 241, 243, 363 F.2d 973, 975 (1966).

In *Curtis,* the plaintiff was injured in a fall caused by a protruding metal covering of a vault beneath a public sidewalk. He could not claim violation of a relevant provision of the municipal building code, because the regulation had been promulgated after the accident in question and was not intended to apply retroactively. Nevertheless, the court of appeals reasoned that "the advent into public law of this evidence of a standard bearing upon the issue of due care need not be entirely ignored in this case." *Id.* The court quoted PROSSER, *supra,* to the effect that:

> the common law standard of reasonable care in the circumstances. *See District of Columbia v. Mitchell,* 533 A.2d 629, 639 (D.C.1987).

9. Appellees could not contend otherwise because, as *M.A.P. v. Ryan, supra* note 5, explains, prior to the District of Columbia Court Reform and Criminal Procedure Act of 1970 (effective February 1, 1971), this court was an intermediate appellate

[W]here the statute does set up standard precautions, *although only for the protection of a different class of persons,* or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances, which the jury should be permitted to consider. There is, in other words, a statutory custom, which is entitled to admission as evidence.

*Id.* (emphasis added). In a later case presenting nearly the same facts, the court again reversed a trial judge's refusal to admit in evidence a building code provision, stating:

> [T]he building code was an important piece of evidence as a reasonable standard of care in maintaining sidewalks in a safe condition. It should have been admitted with an explanation to the jury that they were to consider, not its violation, but rather its embodiment in the building code as indicating the requirements for a safe sidewalk.

*Klein v. District of Columbia,* 133 U.S.App. D.C. 129, 131–132, 409 F.2d 164, 166–67 (1969). *See also Edmonds, Inc. v. Vojka,* 118 U.S.App.D.C. 109, 111, 332 F.2d 309, 311 (1964). The court cited *Curtis* and *Vojka* as well as the passage from PROSSER quoted above.

Appellees conceded at oral argument that, if these pre–1971 decisions of the D.C. Circuit Court are irreconcilable with *Kurtz,* we must follow them instead of *Kurtz* with respect to the admissibility of the OSHA regulation as evidence of the standard of care.[9] Appellees argue, however, that *Curtis* and *Klein* were merely "non-retroactivity" cases; that is, but for the fact that the regulations there did not apply retroactively, they would have protected the class of persons (members of the general public) injured in those

court whose judgments were subject to review by the United States Court of Appeals for the District of Columbia Circuit upon petition for allowance of an appeal. *See M.A.P.,* 285 A.2d at 311. Thus the Circuit Court was not bound by decisions such as *Kurtz,* and, as *M.A.P.* also makes clear, a division of this court is normally bound by decisions of the D.C. Circuit rendered before February 1, 1971. *Id.* at 312.

cases. *Kurtz*, by contrast, involved a workplace safety regulation intended specifically to protect employees and no one else. We are unpersuaded by this distinction. Since the regulation in *Curtis* was not intended to apply retroactively, the court construed it as meant "for the protection of a different class of persons" than the plaintiff there, 124 U.S.App.D.C. at 243, 363 F.2d at 975 (quoting PROSSER), yet held it admissible as evidence of the standard of care. At a minimum, *Curtis* and *Klein* throw enough doubt upon the continued validity of *Kurtz*'s broad exclusion of safety regulations for any purpose as applied to others than the protected class that we do not regard ourselves bound to follow it in deciding what evidentiary use appellants could properly make of the OSHA regulation.

We hold instead, in keeping with *Curtis* and *Klein*, that in a case such as this, OSHA regulations are "competent [and admissible], not in and of themselves as evidence of negligence, but as evidence of a standard of care by which the jury must measure the conduct of the defendants in determining whether they exercised that due care the law required in the situation." *Curtis*, 124 U.S.App.D.C. at 244, 363 F.2d at 976. The jury, upon request, should be instructed to that effect. In so holding, we ally ourselves with the broad preponderance of authority which makes such regulations admissible subject to the normal canons of relevancy. *See* RESTATEMENT (SECOND) OF TORTS § 286 comment (g), at 27 (1964) ("The fact that a legislative enactment requires a particular act to be done for the protection of the interests of a particular class of individuals does not preclude" consideration of "the requirements of the statute ... as evidence

bearing on the reasonableness of the actor's conduct"); *Jeffries v. Potomac Dev. Corp.*, *supra* note 7, 261 U.S.App.D.C. at 361, 822 F.2d at 93 ("there is general agreement on the principle that such transgressions are at least *relevant* to the issue of whether the transgressor has been negligent"); *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 713 n. 22 (1981); *Butler v. L. Sonnenborn Sons, Inc.*, 296 F.2d 623, 626 (2d Cir.1961); *Wood v. Smith*, 495 A.2d at 603; *Smith v. Kris–Bal Realty, Inc.*, 576 A.2d at 936–38; *Koll v. Manatt's Transp. Co.*, 253 N.W.2d 265, 270 (Iowa 1977).

At the same time, we recognize that "[a]n OSHA safety regulation ... may impose a standard of conduct upon employers greater than that which would be considered reasonable in the industry." *McKinnon v. Skil Corp.*, 638 F.2d 270, 275 (1st Cir.1981).[10] In a suit brought by a non-employee, therefore, the defendant must be permitted to point out this fact to the jury and argue that it weakens the evidentiary force of the regulation as applied to the plaintiff.

### IV.

The alternative (non-*per se*) instruction requested by appellants does not fit squarely the instruction authorized by *Curtis* and *Klein*; indeed, appellants asked for the jury to be told that "[t]he violation of a regulation which is a cause of Plaintiffs' injuries is evidence of negligence to be considered by you"—which under those decisions is the use that may *not* be made of the regulation. Judge Sullivan concludes from this that appellants waived entitlement to the proper instruction, and would affirm for that reason. I do not believe the issue of waiver is so easily resolved,[11] but I find it unneces-

10. "When promulgating regulations to enhance workplace safety, ... a government agency might seek to remove the coercion attendant in the employment context by imposing stringent mandatory standards which might not be appropriate when applied to consumers." *McKinnon*, 638 F.2d at 275 n. 7.

11. There is, to begin with, a semantic quality to the distinction between the proper instruction letting the jury consider a regulation as evidence of a standard of care and the one appellants requested, treating violation of the regulation as evidence of negligence. *See, e.g., Melerine*, 659

F.2d at 713 n. 22; *Butler*, 296 F.2d at 626 (Friendly, J.) ("A plaintiff may properly offer a statute or regulation as evidence of a defendant's negligence ..."). Moreover, appellees never challenged the language of the proposed instruction, and, equally important, the judge was disposed to *give* the instruction but declined to do so for reasons which appellees do not defend, and which we find unsustainable, on appeal. Thus, the judge never reached the issue of whether appellants' request for an instruction on the regulation would be proper if reformulated.

sary to decide the issue because I conclude that any error in failing to instruct on the significance of the regulation was harmless in this case. In essence, a proper instruction would have lent the weight of an OSHA regulation to an inference already obvious: if Kettler Brothers had indeed invited Mrs. Thoma to walk through a house under construction,[12] it owed her a duty to keep the stairways reasonably free of debris and slippery conditions. The regulation, in other words, adds nothing to what rational jurors—applying common sense and their own experience—would have found to be the care due an invitee under the circumstances. Because this is not a case where the jury's failure to learn of "a nationwide legal standard" bearing OSHA's "imprimatur," *Rolick v. Collins Pine Co.*, 975 F.2d 1009, 1014 (3d Cir.1992), can reasonably be said to have affected its verdict, I conclude that the failure to instruct on the regulation was harmless error.[13]

### V.

The judgment of the Superior Court is *Affirmed.*

SULLIVAN, Associate Judge, concurring in part and concurring in the result:

■ I agree with the analyses and conclusions of Judge Farrell in parts I. through III. of the majority opinion. Although I concur in Judge Farrell's affirmance of the trial court's judgment in parts IV. and V., I can-

not conclude that the trial court committed "harmless error" by essentially failing to give a jury instruction that appellants did not request. Moreover, on appeal, appellants do not argue that the trial court failed to give the *correct* instruction. Rather, appellants maintain their entitlement to the *erroneous* instruction that they requested in the trial court. Thus, under these circumstances, it is difficult for me to find error on the part of the trial court, even the proverbial "harmless error."

In resolving an appeal from the U.S. Court of Appeals for the District of Columbia Circuit, the Supreme Court has held that "[A] party cannot assign for error, the refusal of an instruction to which he has not a right to the full extent as stated, *and in its precise terms ....*" *Catts v. Phalen*, 43 U.S. (2 How.) 376, 382, 11 L.Ed. 306 (1844) (emphasis added); *see also Shimabukuro v. Nagayama*, 78 U.S.App.D.C. 271, 272–73, 140 F.2d 13, 14–15 (1944); *Hiatt v. New York Cent. R.R.*, 411 F.2d 743, 746 (7th Cir.1969) (same); *Todd County, Minnesota v. Loegering*, 297 F.2d 470, 478 (8th Cir.1961) (same); *Cherry v. Stedman*, 259 F.2d 774, 777–78 (8th Cir. 1958) (same); *Baltimore & O.R.R. v. Felgenhauer*, 168 F.2d 12, 18 (8th Cir.1948) (citations omitted) (same); *Tombigbee Mill & Lumber v. Hollingsworth*, 162 F.2d 763, 765 (5th Cir.1947) (same). By requesting an erroneous instruction on the law pursuant to Super.Ct.Civ.R. 51,[1] and pursuing on appeal the failure of the trial court to give the

12. Appellees, of course, vigorously disputed at trial Mrs. Thoma's status as an invitee to the site, claiming that she—like all of their purchasers of houses under construction—had been denied authorization to set foot in the house unattended while it was being built. Indeed, the great preponderance of appellees' closing argument was devoted to this "trespasser" theory. The trial judge instructed the jury that if it found Mrs. Thoma was in the nature of a trespasser on the site, appellees would owe her a lesser duty of care—a duty only to "refrain from maintaining a hidden engine of destruction and from intentionally, wantonly or willfully injuring the trespasser." Appellants have not challenged this instruction on appeal.

13. Appellants complain that the trial judge directed the jury to disregard the following argument made by their counsel in summation:

But, ladies and gentlemen, it is your function and you must decide what an injury, what this injury to Ann Thoma is worth. You have to decide is it worth 100,000? Is it worth 200,-000? Is it worth more? That's your province. Although the argument is not materially different from one we held permissible in *District of Columbia v. Colston*, 468 A.2d 954, 957–58 (D.C. 1983), the judge's ruling could not have prejudiced appellants in view of the jury's finding against them on liability.

1. Super.Ct.Civ.R. 51 provides in relevant part as follows:

At the close of evidence or at such earlier time during the trial as the Court reasonably directs, any party may file written requests that the Court instruct the jury on the law *as set forth in the requests.*
[Emphasis added.]

erroneous instruction, appellants have not persuaded me that the trial court erred.[2]

Judge Farrell recognizes the fallacy of the (non-*per se* ) instruction requested by appellants in the trial court, namely, that " '[t]he violation of a regulation which is a cause of Plaintiffs' injuries is evidence of negligence to be considered by you,'—which under those decisions is the use that may *not* be made of the regulation." *Ante* at 11. *See also Klein v. District of Columbia,* 133 U.S.App.D.C. 129, 131–32, 409 F.2d 164, 166–67 (1969); *Curtis v. District of Columbia,* 124 U.S.App. D.C. 241, 243, 363 F.2d 973, 976 (1966). I respectfully disagree with his conclusion, however, that there is only a "semantic quality to the distinction between the proper instruction letting the jury consider a regulation as evidence of a standard of care and the one appellants requested, treating violation of the regulation as evidence of negligence." *Ante* at 11 note 11. Although, as Judge Farrell states, other courts may have ignored the distinction between the instructions, *see id.,* absent the imprimatur of the en banc court, we must follow the distinction as recognized and articulated in the decisions of *Klein* and *Curtis,* which are binding on this court. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971); *Klein, supra,* 133 U.S.App.D.C. at 131–32, 409 F.2d at 166–67 (1969) ("In this case, as in *Curtis,* the building code was an important piece of evidence *as a reasonable standard of care* in maintaining sidewalks in a safe condition. It should have been admitted with an explanation to the jury that they were to consider, not its violation, but rather its embodiment in the building code as indicating the requirements for a safe sidewalk.") (emphasis added); *Curtis, supra,* 124 U.S.App.D.C. at 243, 363 F.2d at 976 (1966) ("[S]afety provisions may appropriately be held competent, *not in and of themselves as evidence of negligence,* but as evidence of a standard by which the jury must measure the conduct of the defendants in determining whether they exercised that due care the law required in the situation"). (Emphasis added.)

Accordingly, although I concur in the result reached by Judge Farrell, I would reach this result via a different route without a finding of "harmless error" on the part of the trial court.

FERREN, Associate Judge, concurring in part and dissenting in part:

I agree with Judge FARRELL that the OSHA regulation at issue was admissible "as evidence of a standard [of care] by which the jury must measure the conduct of the defendants in determining whether they exercised that due care the law required in the situation." *Curtis v. District of Columbia,* 124 U.S.App.D.C. 241, 244, 363 F.2d 973, 976 (1966), *quoted ante* at 8; *see Klein v. District of Columbia,* 133 U.S.App.D.C. 129, 131–132, 409 F.2d 164, 166–167 (1969), *quoted ante* at 8. I also conclude, in line with the reasoning in Judge FARRELL's footnote 11, *see ante* at 730 n. 11,—and contrary to Judge SULLIVAN's view—that appellants did not waive entitlement to the proper instruction.[1]

2. Under the circumstances, the trial court was under no duty to recast, modify, or otherwise correct the instruction. *See Coleman v. Chudnow,* 35 A.2d 925, 926 (D.C.1944); *George v. United States,* 75 U.S.App.D.C. 197, 201, 125 F.2d 559, 563 (1942); *Stewart v. Capital Transit Co.,* 70 U.S.App.D.C. 346, 347, 108 F.2d 1, 3 (1939), *cert. denied,* 309 U.S. 657, 60 S.Ct. 515, 84 L.Ed. 1006 (1940); *Jackson v. United States,* 48 App.D.C. 272, 275 (1919); *Kreiner v. United States,* 11 F.2d 722, 725 (2d Cir.), *cert. denied,* 271 U.S. 688, 46 S.Ct. 639, 70 L.Ed. 1152 (1926); *but cf. Whitaker v. United States,* 617 A.2d 499, 507–08 (D.C.1992) (where a jury has demonstrated confusion, court is obligated to give some effective reinstruction, including, but not limited to, modifying or correcting imprecise or erroneous instructions).

1. Judge FARRELL refers to the trial judge's reasons for declining to give the proposed instruction— reasons which "appellees do not defend, and which we find unsustainable, on appeal." *Ante* at 730 n. 11. First, the judge relied on the fact that the regulations in effect at the time of the accident had been replaced by the time of trial. More specifically, the earlier regulations had been replaced because they were "redundant or ambiguous or are not clearly applied to all situations," 55 Fed.Reg. 47661 (1990). The regulation in effect at the time of trial provided that "[s]lippery conditions on stairways shall be eliminated before the stairways are used to reach other levels." 29 C.F.R. § 1926.1052(a)(7) (1992). But as evidence of the standard of care governing appellees' conduct, the regulations in effect at the time of the accident clearly were relevant. Moreover, the succeeding regulations,

I part company with Judge FARRELL, however, on his invocation of harmless error, and thus I respectfully dissent from affirmance. In *Curtis,* on which Judge FARRELL and I rely, the court reversed the judgment on a jury verdict for the defendants. In concluding that plaintiff-appellant had been entitled to the omitted instruction, the *Curtis* court did not consider harmless error, apparently believing that the jury would not necessarily have come out the same way if it had known it was entitled to find evidentiary value in the defendants' violation of a provision of the building code.[2] Similarly, I cannot say that the jury's failure to learn of "a nationwide legal standard" bearing the "imprimatur" of OSHA regulators [3]—a standard that was relevant to the common law duty appellees owed Mrs. Thoma—could have had no effect on the jury's verdict. In *Rolick, supra* note 3, the United States Court of Appeals for the Third Circuit reversed for failure to inform the jury about an OSHA standard, as against a harmless error challenge, even though the jury was told that the defendants had violated an American Pulpwood Association standard that actually incorporated the undisclosed OSHA standard. *See id.,* 975 F.2d at 1014. The case for harmless error was even stronger in *Rolick* than it is here.

I would therefore reverse and remand for a new trial.

---

while eliminating as "redundant" the express requirement of debris removal, maintained and even strengthened the requirement that an employer eliminate slippery conditions from stairways. Second, the judge concluded that the regulation applied only to emergency situations or "temporary" stairways used in the construction process, not those incorporated into the permanent structure. But neither the old nor the new regulations made this distinction with regard to the safety condition of stairways. Title 29 C.F.R. § 1926.1050 provides that this subpart ("Stairways and Ladders") "applies to *all* stairways ... used in construction, alteration, repair ..." (emphasis added). And where a requirement was to relate to stairways "that will not be a permanent part of the structure," the drafters

used those precise words or equivalent language. *See* 29 C.F.R. § 1926.1052(a)(1); *see also id.* § 1926.1052(b) ("Temporary service"). Absent clearer indication in the text, I cannot agree that the regulators meant to relieve a contractor of the duty to prevent slippery or dangerous conditions whenever the contractor used the permanent staircase for access to other levels during construction.

2. The other principal case on which Judge FARRELL and I rely, *Klein,* reversed the grant of a directed verdict at the end of the plaintiffs' case.

3. *Rolick v. Collins Pine Co.,* 975 F.2d 1009, 1014 (3d Cir.1992).